UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Rebecca Buddenberg, <br><br> Plaintiff, <br><br> vs. <br><br> Robert K. Weisdack, *et al.* <br><br> Defendants | Case No. 1:18cv522 <br><br> Judge Dan Aaron Polster <br><br> Magistrate Judge William H. Baughman, Jr. |

**PLAINTIFF'S OPPOSITION TO**

**DEFENDANT JAMES BUDZIK'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT (DOC. #14, 14-1)**

**AND TO**

**DEFENDANTS ROBERT WEISDACK, GEAUGA COUNTY HEALTH DISTRICT, TIM GOERGEN,
DAVID GRAGG, CHRISTINA LIVERS, CATHERINE WHITRIGHT, AND ALTA WENDELL'S
MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. #20, #21)**

Plaintiff Rebecca Buddenberg respectfully responds in a combined filing, as ordered on
June 5, 2018, to Defendant James Budzik's motion to dismiss the claims asserted against him
(Doc. #14, 14-1) and to Defendants Robert Weisdack, Geauga County Health District, Tim
Goergen (Board of Health president), David Gragg, Christina Livers, Catherine Whitwright, and
Alta Wendell's ("Geauga Defendants") motion for judgment on the pleadings (Doc. #20, #20-
1).[1]

---

[1] Defendant Alta Wendell erroneously joined this motion: she is not named in any of the claims for which the
Geauga Defendants have moved for judgment on the pleadings. She is named only in the aiding-and-abetting claim
under Ohio Rev. Code § 4112.02(J). Thus, her part of the motion should be denied as moot.

# TABLE OF CONTENTS

Table of Authorities ……………………………………………………………………………...iii

I.      Issues Presented .................................................................................................... 1

II.     Introduction ........................................................................................................... 2

III.    Facts....................................................................................................................... 3

IV.     Law and Argument ............................................................................................... 5

        A.      Buddenberg has stated a claim against Budzik under the Fair Labor Standards
                Act ……………….................................................................................. 6

                1.      As a legal representative acting "in the interest of [the] employer," Budzik
                        falls within FLSA's definition of "employer" and thus is subject to suit
                        under FLSA's anti-retaliation provision .................................................... 6

                2.      The statute's structure and purpose further support broader liability for
                        retaliation than for violations of FLSA's substantive wage-and-hour
                        provisions ................................................................................................ 7

                3.      Whether Budzik had authority over Buddenberg's employment is
                        irrelevant to whether she suffered an adverse employment action, and
                        drawing all inferences in Buddenberg's favor, Budzik's actions influenced
                        the Board's discipline ............................................................................ 10

                4.      Budzik's professed concerns about a supposed chilling effect on lawyers
                        ignore that lawyers are capable of retaliation, and should be just as, if not
                        more, accountable ................................................................................... 12

        B.      Just as Buddenberg has stated an FLSA claim, she has stated an Ohio Rev. Code
                § 4111.17(D), as Ohio law looks to federal law for the definition of "employer.". 13

        C.      Budzik acted under color of state law and lacks immunity, as a reasonable person
                in his shoes would have known Buddenberg's speech was protected under binding
                Supreme Court precedent .................................................................................. 13

                1.      Budzik is a state actor, because he worked at the Board of Health's
                        direction, including in performing an administrative, employment-law
                        function ................................................................................................... 13

                2.      Buddenberg plausibly alleged that she engaged in protected speech........ 16

                3.      Budzik is not entitled to qualified immunity........................................... 18

i

D.     The statutes' plain language permits Buddenberg to bring her state statutory claims against Budzik; and even if a qualified privilege meant for the legal-malpractice context were extended to her situation, she could show malice, which just means "fraud, bad faith, collusion[,] or other malicious conduct." ............... 20

E.     Statutory text and structure, and practical considerations, show that Ohio Rev. Code § 2307.60 requires no criminal conviction ................................................... 23

    1.   Statutory text and structure, and case law, support that § 2307.60 provides a civil action not predicated on any criminal process ....................................... 24

    2.   The Ohio Supreme Court's *Jacobson v. Kaforey* decision—and other case law—undercuts the proposition that civil recovery for criminal acts requires a conviction  ................................................................................................. 26

    3.   Statutory text and structure similarly support that § 2921.03 requires no criminal conviction before a victim may recover in a civil action ................. 27

    4.   Practical considerations and statutory purpose show that the legislature did not intend to impose an unwritten conviction requirement in § 2307.60 ....... 28

V. Conclusion  ..................................................................................................... 30

# TABLE OF AUTHORITIES

CASES

*A.A. v. Otsego Local Schools Board,* 3:15-cv-1747, 2017 WL 7387261

(N.D. Ohio, Dec. 21, 2016) ........................................................................ 26

*A. Philip Randolph Institute v. Husted,* 838 F.3d 699 (6th Cir. 2016) ........................................ 25

*Allard v. Michigan House of Representatives*, 200 F. Supp. 3d 703 (W.D. Mich. 2016) ............... 17

*Arias v. Raimondo* 860 F.3d 1185, (9th Cir. 2017), *cert. denied,* 138 S. Ct. 673 (2018) ......... 7,8,9,11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 5

*Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888 (6th Cir. 2003) ............................................. 19

*Bash v. Textron Fin. Corp.*, 834 F.3d 651 (6th Cir. 2016) ...................................................... 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 5

*Birch v. Cuyahoga County Probate Court*, 392 F.3d 151 (6th Cir. 2004) ................................... 13

*Black-Clawson Co. v. Evatt*, 38 N.E.2d 403, 408 (Ohio 1941) ................................................ 28

*Boddy v. Astec., Inc.*, No. 1:11-cv-123, 2012 WL 5507298 (E.D. Tenn. Nov. 13, 2012) ......... 10

*Boulton v. Swanson*, 795 F.3d 526 (6th Cir. 2015) ............................................................. 18,19

*Bowe v. Judson Burns, Inc,.* 137 F.2d 37 (3d Cir. 1943) ....................................................... 7

*Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006) ...................... ..........*passim*

*Carollo v. Boria*, 833 F.3d 1322 (11th Cir. 2016) ............................................................. 18

*Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th Cir. 2001) ................................. 5

*Cartwright v. Batner*, 15 N.E.3d 401 (Ohio Ct. App. 2014) .................................................. 26

*Catz v. Chalker*, 142 F.3d 279, 285 (6th Cir. 1998) ........................................................... 14

*Centeno–Bernuy v. Perry,* 302 F.Supp.2d 128 (W.D.N.Y.2003) ............................................. 8,10

*Chem. Bank v. Kausmeyer*, No. 4:15CV1850, 2016 U.S. Dist. LEXIS 170659

(N.D. Ohio Dec. 9, 2016) ...................................................................... 26

iii

*Chevalier v. Estate of Barnhart*, 803 F.3d 789 (6th Cir. 2015)....................................................... 14

*Cooper v. Wilson*, 309 F.2d 153 (6th Cir. 1962) ........................................................................... 14

*Dellinger v. Science Applications International Corp.* 649 F.3d 226 (4th Cir. 2011)......................... 9, 10

*Diaz v. Longcore*, No. 1:17-cv-460, 2017 WL 8790954 (W.D. Mich., Nov. 22, 2017)............. 9

*Dibrito v. City of St. Joseph*, 675 F. App'x 593 (6th Cir. 2017)..................................................... 16

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ................................................................ 5

*Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. 1984) ................................................................ 7

*Donovan v. Schoolhouse Four, Inc*. 573 F. Supp. 185 (W.D.Va.1983).......................................... 7

*Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir. 1977)..................................................... 6

*Ehrlich v. Kovack*, 125 F. Supp.3d 638 (N.D. Ohio 2015) .......................................................... 17

*Ellington v. City of East Cleveland*, 689 F.3d 549 (6th Cir. 2012) ............................................. 7

*Equal Employment Opportunity Comm'n v. Locals 14 and 15, Int'l Union of Operating Eng'rs*,

438 F. Supp. 876 (S.D.N.Y.1977)) ........................................................................................... 8

*Firestone v. Galbreath*, 976 F.2d 279 (6th Cir. 1992)................................................................ 23

*Fusion Oil, Inc. v. American Petroleum Retail, Inc.* Nos. 3:05CV7434 and 3:06CV7018,

2008 U.S. Dist. LEXIS 13725 (N.D. Ohio Feb. 13, 2008)................................................... 27

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) .............................................................................. 16

*Garr v. Warden, Madison Corr. Inst.*, 933 N.E.2d 1063 (Ohio 2010)........................................ 24

*Gibson v. Rose*, No. 1:12 CV 1509, 2012 U.S. Dist. LEXIS 101604

(N.D. Ohio July 23, 2013) ...................................................................................................... 28

*Gliatta v.  Tectum, Inc.*, 211 F. Supp.2d 992 (S.D. Ohio 2002) ............................................... 22

*Haight v. Minchak*, 146 Ohio St.3d 481 (2016)...................................................................... 13

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) ...................................... 16,18,19,20

*Horen v. Toledo*, 594 F. Supp. 2d 833 (N.D. Ohio 2009) ...................................................... 14

*In re L.W.*, 861 N.E.2d 546 (Ohio Ct. App. 2006)  ............................................... …..26

*Jacobson v. Kaforey*, 75 N.E.2d 203, 206 (Ohio 2016) ................................................. …..*passim*

*Jamison v. Galena*, 38 N.E.3d 1176 (Ohio Ct. App. 2015) ...................................... 27

*Jane v. Patterson*, 1:16-cv-2195, 2017 WL 1345242 (N.D. Ohio Apr. 12, 2017)  ................................. 26

*Jardien v. Winston Network, Inc.*, 888 F.2d 1151 (7th Cir. 1989)........................... 12

*Keene Corp. v. United States*, 508 U.S. 200 (1993)  .................................. 25

*Kindle v. City of Jeffersontown, Ky.*, 374 F. App'x 562 (6th Cir. 2010) ...................................... 19

*Lane v. Franks*, 134 S. Ct. 2369 (2014)........................................................................16,17,18,19

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) ...................................... 11,19

*LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 872 N.E.2d 254,

2007-Ohio-3608 (2007)...................................................................................... 23

*Luciani v. Schiavone*, No. C-1-97-272, 2001 WL 1842457 (S.D. Ohio Jan. 2, 2001) ............. 23

*MacDonald v. Bernard*, 438 N.E.2d 410 (Ohio 1982)........................................... 28

*Majer v. Twp. of Long Beach*, 2009 WL 3208419 (D.N.J. Sept. 30, 2009)......................................... 15

*Mayhew v. Town of Smyrna*, 856 F.3d 456 (6th Cir. 2017) ..................................... 16,18

*Meek v. United States*, 136 F.2d 679 (6th Cir. 1943) ........................................... 7, 10

*Miller v. City of Canton*, 319 F. App'x 411 (6th Cir. 2009) ........................................ 19

*Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017)................................................... 5

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960) ................................ 8

*Montano-Perez v. Durrett Cheese Sales, Inc.*, 666 F. Supp. 2d 894 (M.D. Tenn. 2009) ............... 10

*Nix v. O'Malley*, 160 F.3d 343 (6th Cir. 1998) ........................................... 2,20,21,22

*Northrup v. City of Toledo Police Division*, No. 3:12-cv-01544, 2015 U.S. Dist. LEXIS 102587

(N.D. Ohio Aug. 5, 2015)..................................................................................... 28

*Ortiz v. Kazimer*, 1:11-cv-1521, 2015 WL 1400539 (N.D. Ohio Mar. 26, 2015) ................. 26

*Otworth v. Vanderploeg*, 61 F. App'x 163 (6th Cir. 2003)........................................................ 14

*Petit v. Steppingstone, Center for the Potentially Gifted*, 429 F. App'x 524 (6th Cir. 2011) .............. 10

*Petrey v. Simon*, 19 Ohio App.3d 285, 288, 484 N.E.2d 257 (1st Dist.1984)........................ 23

*Phillips v. City of Dawsonville*, 499 F.3d 1239 (11th Cir. 2007)................................ 17,18

*Polk Cty. v. Dodson*, 454 U.S. 312 (1981)........................................................ 14,15

*Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752 (6th Cir. 2010)........................................ 20

*Reich v. State Credit Inc.*, 897 F. Supp. 1014 (N.D. Ohio 1995)................................ 22

*Rivera v. Installation System*, 623 F. Supp. 269 (D.P.R.1985).................................. 10

*Robinson v. Shell*, 519 U.S. 337 (1997)........................................................ 8

*Rosania v. Taco Bell of America, Inc.*, 303 F. Supp. 2d 838 (N.D. Ohio 2004)........................ 22

*Ryan v. Wright*, 2007-Ohio-942, 2007 WL 661815 (Ohio App. 10th Dist. Mar. 6, 2007)..... 22

*Seitz v. E. Nottingham Twp.*, 2017 WL 2264637 (E.D. Pa. May 24, 2017) ........................... 15

*Shoemaker v. Gindelsberger*, 887 N.E.2d 1167 (Ohio 2008)...................................... 22

*Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636 (1987)............................... 22,23

*Slorp v. Lerner*, 587 F. App'x 249 (6th Cir. 2014) ........................................... 28

*Solis v. Laurelbrook Sanitarium and School, Inc.*, 642 F.3d 518 (6th Cir. 2011)............................ 7

*Smith v. Hilltop*, 99 F. App'x 644 (6th Cir. 2004) ........................................... 14

*State ex rel. Cincinnati Enquirer v. Hunter*, 24 N.E.3d 1170 (Ohio 2014) .................................. 26

*Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 927 N.E.2d 1092 (Ohio 2010) ...................... 24

*Stinebaugh v. Wapakoneta*, 630 F. App'x 522 (6th Cir. 2015)................................... 19

*Swiss Reinsurance Am. Corp., Inc. v. Roetzel & Andress*, 837 NE.2d 1215

(Ohio App. 9th Dist. 2005)................................................................. 22

*Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590 (1944)........................... 6

*Thompson v. R&R Service Systems, Inc.*, 10th Dist. Franklin Nos. 96APE10-1277,

96APE10-1278, 1997 WL 359325 (June 19, 1997) ............................................................ 23

*Tower v. Glover*, 467 U.S. 914 (1984) ....................................................................... 14

*United States v. Wuliger*, 981 F.2d 1497 (6th Cir.1992) ......................................... .2,21

*Walker v. Burkes*, 2:15-cv-3058, 2017 WL 3962627 (S.D. Ohio Sept. 8, 2017) .................... 17

*Wesaw v. City of Lancaster*, No. 2:2005cv0320, 2005 U.S. Dist. LEXIS 36691

(S.D. Ohio Dec. 15, 2005) ........................................................................ 26

*Whitney v. City of Milan*, 677 F.3d 292 (6th Cir. 2012) ......................................... 19

*Wyatt v. Cole*, 504 U.S. 158 (1992) ..................................................................... 14

## CONSTITUTIONS

Ohio Const., Art. II, Section 34a ......................................................................... 13

## STATUTES

29 U.S.C. § 203 ......................................................................................... 6,13

29 U.S.C. § 215 ......................................................................................... 6,7

29 U.S.C. § 216 ......................................................................................... 6,9

29 U.S.C. § 660 ......................................................................................... 21

Ohio Rev. Code § 2307.50 .............................................................................. 24

Ohio Rev. Code § 2307.60 .......................................................................... *passim*

Ohio Rev. Code § 2307.61 ........................................................................... 25,26

Ohio Rev. Code § 2913.01 ........................................................................... ..28

Ohio Rev. Code § 2921.03 ........................................................................... ..20,27

Ohio Rev. Code § 2921.05 ............................................................................. 20

Ohio Rev. Code § 2921.52 ............................................................................. 28

Ohio Rev. Code § 2923.31 ............................................................................. 25

Ohio Rev. Code § 2933.52 ........................................................................... 20

Ohio Rev. Code § 4112.02 ........................................................................... 21

Ohio Rev. Code § 4111.17 ..................................................................... 1,13,21

## I. ISSUES PRESENTED

1. **"Employer" within FLSA and Ohio Rev. Code § 4111.17(D).** The Fair Labor Standards Act (FLSA) allows employees to sue "any employer" for retaliation, defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." And Ohio law looks to FLSA for the definition of "employer." "Person" includes "legal representative." Here, the Complaint alleges that attorney James Budzik, acting in Buddenberg's employer's interest, retaliated against Buddenberg for engaging in protected activity under the Act. Has Buddenberg stated a claim for Budzik's liability under the Act and § 4111.17?

2. **Budzik as state actor.** Private attorneys are not exempt from state-actor status just because they represent state entities, and are liable where their actions involve the performance of managerial, investigative, or administrative employment-related actions. Buddenberg's complaint alleged that Budzik implemented the District's retaliation by participating in and executing administrative, managerial, and investigative employee-discipline, hiring, and firing decisions. Construing the Complaint against Budzik, should the Court reject Defendant's insistence that none of his actions were fairly attributable to the District?

3. **Speech as a citizen.** The First Amendment protects public-employee speech even if it "concerns information learned during that employment" unless it was required by, and made in the ordinary course of, the employee's job. Buddenberg alleged that her reports of official misconduct were *not* part of her ordinary official duties, and that she was criticized for speaking out *because* it was not her job to do so. Drawing all inferences in her favor, did Buddenberg plausibly allege that she was not employed as a roving ombudswoman on issues ranging from discrimination to graft?

4. **"Standing" to assert state-claims.** The Ohio statutes under which Buddenberg has asserted claims refer broadly to "no person" or "any person." The Sixth Circuit has held that such language permits suits against attorneys, even acting in their representative capacity. And a qualified privilege applying in the legal-malpractice context does not apply where Buddenberg aims to vindicate her own rights, not those of any third party. May Buddenberg pursue those statutory claims?

5. **Civil liability for criminal acts.** Courts must interpret statutes according to their plain meaning and avoid reading in requirements not in the text. Ohio Rev. Code § 2307.60, which establishes civil liability for criminal acts, does not refer to a criminal "conviction." Neither does Ohio's intimidation statute, § 2921.03. The Ohio Supreme Court and other courts have allowed proceedings under these statutes, even with no conviction. Should this Court write in its own criminal-conviction requirement to protect Defendants from civil recovery for the wrongs they perpetrated on Buddenberg?

## II. INTRODUCTION

"Zealous defense of a client does not permit law-breaking."[1] So wrote the Sixth Circuit in *Nix v. O'Malley*, in which the Court permitted a lawsuit to proceed against counsel who had allegedly violated the plaintiff's statutory rights, observing that "nothing" in the statute "affords attorneys special treatment."[2] This is true here regarding both Plaintiff Buddenberg's statutory and her constitutional claims, despite Defendant Budzik's attempts, in his motion to dismiss, to hide behind his lawyer credentials to excuse his illegal conduct.

Taking the First Amended Complaint's allegations as true and drawing all inferences in Buddenberg's favor—as the Court must on a motion to dismiss—the Court should permit the suit to proceed: the Complaint plausibly alleges that Budzik actively retaliated, including by lodging false accusations against Buddenberg and subjecting her to a grueling employment "hearing" in which he interrogated her using those accusations, knowing they were false and retaliatory. He then attempted to intimidate her into dropping her EEOC charge in a supposed offer to "settle"—and when she refused to do so, drafted an employment order finding her guilty of all but one allegation and recommended that the Board discipline her, which it did.[3]

As previewed in the Issues Presented above, and discussed below, Budzik's actions make him liable. Were this Court to carve out a special exemption for lawyers, it would undermine the Constitution and the legislature's intent to hold accountable *all* those who engage in unlawful retaliation because of the strong policy for allowing employees to speak on matters like pay

---

[1] *Nix v. O'Malley*, 160 F.3d 343, 353 (6th Cir. 1998).

[2] *Id.* (quoting *United States v. Wuliger,* 981 F.2d 1497, 1505 (6th Cir.1992)).

[3] Although the operative First Amended Complaint sufficiently alleges facts to survive Defendants' dispositive motions, and Defendants should have construed it in Buddenberg's favor, Buddenberg is further detailing Budzik's human-resources role and egregious conduct in a separately filed motion for leave to file a second amended complaint, and submitting the proposed amendment (Doc. Nos. 27, 27-1). If the Court is inclined to grant the motion to dismiss the current complaint, the proposed amendment goes into even more detail to show that dismissal is unwarranted.

discrimination, potential corruption, and unlawful retaliation itself. As Sixth Circuit, Ninth Circuit, and Ohio cases show, a lawyer ostensibly acting on his client's behalf does not get to break the law by engaging in prohibited action that would dissuade a reasonable person from engaging in protected activity—and then hide behind his credentials to get away with it. Budzik, like the other Defendants, must answer for his own bad acts. The Geauga Defendants too must answer under Ohio's statutes creating civil liability for criminal acts (not convictions).

## III.  FACTS

Rebecca Buddenberg was the Geauga County Health District's fiscal coordinator. Her responsibilities included processing payroll and some human-resources functions, but did not involve reporting to the Board regarding matters such as the boss's potential ethical violations or failures to adhere to policy, on unequal-pay practices, or on retaliation for opposing discrimination.[4] Buddenberg became aware of potential ethical misconduct by her boss, Health Commissioner Robert Weisdack.[5] She also became aware of Weisdack's refusal to correct unequal-pay practices. On October 24, 2016, Buddenberg took to the Board these and other concerns about Weisdack's failure to adhere to policy and to ethics standards.[6] There was no routine personnel process through which she did this; she simply emailed the Board about her concerns about leadership, and that she wished to present them to the Board. Only when a Board member came to get her from her office did Buddenberg know the Board wanted her to present at a special meeting being held that very day.[7]

Weisdack began retaliating against Buddenberg immediately, and did not relent. Despite Buddenberg's many reports to the Board of Health, the Board did nothing to stop the retaliation.[8]

---

[4] Compl. ¶¶ 11–14, 28.
[5] Id. ¶¶ 15–16.
[6] Id. ¶ 26 a-h.
[7] Id. ¶ 28.
[8] See, e.g., id. ¶¶ 31, 40.

Buddenberg wrote at least nine emails to the Board (some to member Christina Livers and some to attorney Jeff Embleton), and spoke to Board members at least twice. Each communication reported on the adverse acts and Weisdack's retaliatory motive. Each commented on the effect of Weisdack's conduct on the Health District's overall operation, which included sometimes chilling others' speech.[9] Budzik knew about these reports.[10]

One such report bears mention as it featured prominently in the predisciplinary hearing Budzik conducted. Buddenberg reported to the Board in a February 1, 2017 email, "I cannot help but believe Dan's dismissal was directly a result of my reporting and his defending me for reporting."[11] She was reporting what she believed was unlawful retaliation against Mr. Mix: he was terminated because he opposed the unlawful retaliation directed at Buddenberg for her having reported unequal-pay practices, potential ethical misconduct, and retaliation.[12] Two weeks later, Buddenberg reported the retaliation to the EEOC. The Health District received notice on February 24, 2017.[13]

A few days later, on February 28, 2017, Buddenberg received a Notice of Disciplinary Action, setting forth several false allegations contending poor performance, even though previously she had received only positive performance reviews.[14] The Complaint alleges that Budzik not only developed the allegations, along with Weisdack, but also assumed the lead role of conducting the hearing[15]—a human-resources role, as Buddenberg's proposed second amended complaint clarifies. Knowing the accusations were baseless and retaliatory—including because Buddenberg gave numerous reasons that each allegation was unfounded—Budzik nevertheless interrogated Buddenberg. As the

---

[9] Id. ¶¶ 40–46, 52–56, 61, 64.

[10] Id. ¶ 40.

[11] Id. ¶ 64.

[12] Id.

[13] Id. ¶¶ 67–68.

[14] Id. ¶¶ 72, 76, 79–86.

[15] Id. ¶ 87.

proposed amendment alleges, he pressed her on irrelevant minutiae to demoralize and undermine her. Particularly egregious was his treatment of the February 1 retaliation report mentioned above, where he promoted the nonsensical (and retaliatory) notion that the report constituted a false statement to gain some "benefit,"[16] and pressed her in an intimidating way about her characterization of the separation as a "dismissal," even though she explained that it was Budzik's own involvement leaving a termination-notice letter open on an employee's computer that led her to that belief.[17]

After the hearing, Budzik tried to get Buddenberg to drop her EEOC charge in a supposed "settlement" offer. When she stood her ground, Budzik recommended to the Board it find her guilty on seven of the eight charges, which the Board did. This included the charge regarding the February 1 email, which, as an employment lawyer who advises his clients on discrimination law, he knew was unlawful retaliation for engaging in protected activity. The Board ordered Buddenberg be suspended for three days, demoted, and her pay reduced. She was constructively discharged on May 26, 2017.

## IV. LAW AND ARGUMENT

Whether on a motion to dismiss or for judgment on the pleadings, the Court must construe the complaint "in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."[18] Defendants must prove that Buddenberg's complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] They haven't met that burden here.

---

[16] *Id.* ¶ 89.

[17] *Id.* ¶ 90.

[18] *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)); *Capitol Indem. Corp. v. Braxton*, 24 F. App'x 434, 439 (6th Cir. 2001) (reversing district court's granting of a motion for judgment on the pleadings).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

**A.  Buddenberg has stated a claim against Budzik under the Fair Labor Standards Act.**

While Budzik argues regarding Claim 4 that as an attorney, he is not an "employer" under the FLSA and cannot be liable for retaliating, the statute's text, structure, and purpose show he's wrong. The statute's definitions—which must be liberally construed to effectuate its remedial purpose[20]— show that Congress intended to allow suits not just against the aggrieved plaintiff's actual employer, but also against those—including attorneys—working in the employer's interest.

**1.  As a legal representative acting "in the interest of [the] employer," Budzik falls within FLSA's definition of "employer" and thus is subject to suit under FLSA's anti-retaliation provision.**

Budzik is subject to suit because he meets the statute's definition of "employer"—a concept so straightforward yet damaging to Budzik's position he omits the definition entirely. To begin with, 29 U.S.C. 215(a)(3), the antiretaliation provision, makes it "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." Then, 29 U.S.C. 216(b) creates a private right of action against "[a]ny employer" who violates § 215(a)(3). What is key is that under FLSA, "'[e]mployer' includes *any person acting directly or indirectly in the interest of an employer* in relation to an employee…"[21] "Person," "means an individual, partnership, association, corporation, business trust, *legal representative*, or any organized group of persons."[22]

Thus, under the statute's plain language (liberally construed or not), Budzik—a "legal representative" who was undisputedly acting "in the interest of an employer in relation to" the

---

[20] *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 144 (6th Cir. 1977) ("[I]n interpreting provisions of the Fair Labor Standards Act the courts have construed the Act's definitions liberally to effectuate the broad policies and intentions of Congress."); *see also Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944) (noting that given FLSA's "remedial and humanitarian in purpose, . . . [the] statute must not be interpreted or applied in a narrow, grudging manner").

[21] 29 U.S.C. § 203(d) (emphasis added).

[22] 29 U.S.C. § 203(a) (emphasis added).

employee (Buddenberg)—is subject to suit under FLSA. In *Arias v. Raimondo*,[23] the appeals court permitted a FLSA retaliation suit to proceed against a lawyer, under the statute's plain language—and the Supreme Court denied certiorari. In *Donovan v. Schoolhouse Four, Inc.*,[24] the court, citing the definition of "employer," held that an outside consultant involved in recommendations like employee firings was jointly and severally liable with the corporate defendant and plant manager because of his personal involvement in the plaintiffs' retaliatory discharge.

### 2. The statute's structure and purpose further support broader liability for retaliation than for violations of FLSA's substantive wage-and-hour provisions.

Ignoring the statute's plain language, Budzik insists that an "employer" subject to liability for retaliation must have some "economic control" over the employee. But none of the cases Defendant cites for this proposition address *retaliation*,[25] addressing instead substantive wage-and-hour provisions. As both the Sixth and Ninth Circuits have recognized, the statute's structure and purpose support broader liability for retaliation than for substantive wage-and-hour violations.

In *Meek v. United States*, for example, the Sixth Circuit, addressing an individual's responsibility under 29 U.S.C. § 215(A)(3) for an employee's retaliatory discharge, held, "[i]t is immaterial whether Meek, at the time, was Crutcher's employer . . . since the prohibitions of the statute are directed to 'any person.'"[26] The court reasoned, "the differentiation between the prohibitions in other sections of the Act directed to the 'employer,' and those here directed to 'any person,' is significant of the intent of the Congress. The language is clear and conforms to the pattern of the Act."[27]

---

[23] 860 F.3d 1185, 1192 (9th Cir. 2017).

[24] 573 F. Supp. 185, 190 (W.D.Va. 1983).

[25] *See, e.g., Solis v. Laurelbrook Sanitarium and School, Inc.*, 642 F.3d 518 (6th Cir. 2011); *Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. 1984); *Ellington v. City of East Cleveland*, 689 F.3d 549 (6th Cir. 2012). (Defendants quote the latter case in a block quote, Budzik Mot. Dism. at 10, although failed to provide the name or citation.)

[26] *Meek v. United States*, 136 F.2d 679, 679 (6th Cir. 1943).

[27] *Meek*, 136 F.2d at 680 (citing *Bowe v. Judson Burns, Inc.* 137 F.2d 37, 38–39 (3d Cir. 1943). (In *Bowe*, the court, looking at "[l]egislative intent . . . as a whole," rejected a union's contention that it could not be liable to its members because it was not the "employer." The court noted that while the wage-and-hour provisions applied to "employers," the antiretaliation provision applied to "any person.")

The Ninth Circuit recently further explained why retaliation applies beyond actual employers, and why the "economic control" or "economic realities" test courts have applied in the substantive-wage-and-hour violation realm does not apply to retaliation claims.[28] The two provisions, the court explained, are "as different as chalk is from cheese."[29] The "economic-control" or "economic-reality" test for determining who constitutes an "employer" legitimately applies when considering the FLSA provisions creating liability for wage-and-hour violations, because "by definition it is the actual employer who controls substantive wage and hours issues."[30] By contrast, the court held, the anti-retaliation provision is intended to ensure the employee's "unfettered access" to the statute's "remedial mechanisms" (quoting the U.S. Supreme Court's decision in *Robinson v. Shell*[31])—and this purpose is not served by importing an "economic control" or "economic realities" test to decide who may be held liable for retaliation.[32]

Indeed, when discussing the expanded scope of Title VII's antiretaliation provision compared to its substantive-liability provisions, the U.S. Supreme Court held in *Burlington Northern & Santa Fe Railway Co. v. White*[33] that "[i]nterpreting the antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment of the Act's primary

---

[28] While Defendant misrepresents *Arias* as applying to the "particular facts of the case," nothing in the Ninth Circuit's opinion limits its holding to the facts in that case. The court's reasoning is based on statutory construction, which is as applicable here as it was there.

[29] *Id.* at 1189.

[30] *Id.* at 1190.

[31] 519 U.S. 337, 346 (1997).; *see also Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292 (1960) (noting the purpose of FLSA's anti-retaliation provision is to promote the enforcement mechanism: "it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions.").

[32] *Arias,* 860 F.3d at 1190. *See also Centeno–Bernuy v. Perry,* 302 F.Supp.2d 128, 135 (W.D.N.Y.2003) ("It is well established that the anti-retaliation provision of the FLSA is critical to the entire enforcement scheme of the federal wage and hour law.") (citing *Mitchell v. Robert DeMario Jewelry, Inc.,* 361 U.S. 288, 292 (1960), and *Equal Employment Opportunity Comm'n v. Locals 14 and 15, Int'l Union of Operating Eng'rs,* 438 F. Supp. 876, 879–80 (S.D.N.Y.1977)); *id.* ("Unchecked retaliation, no matter its form, subverts the purpose of the FLSA. . . . ").

[33] 548 U.S. 53, 67 (2006).

objective depends."[34] And differentiating between FLSA provisions is consistent with *Burlington*'s interpretation of the same in Title VII—while the substantive-liability provisions applied only to workplace-related or employment-related acts, "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."[35]

Budzik relies heavily on the Fourth Circuit's *Dellinger v. Science Applications Int'l Corp.* decision. But *Dellinger,* as the Ninth Circuit in *Arias* pointed out,[36] is inapposite. *Dellinger* addressed "the question of whether an applicant for employment is an "employee" authorized to sue and obtain relief for retaliation under § 216(b)," and thus could sue a prospective employer.[37] (It determined such an applicant could not). It did not decide the issue of who or what constitutes an "employer." And the *Dellinger* prospective employer would not have fallen within FLSA's definition of "employer," because no one in that case alleged that the prospective employer had acted "directly or indirectly in the interest of [the] employer." Buddenberg's complaint alleges precisely that of Budzik.

As for *Diaz v. Longcore*,[38] from which Budzik quotes extensively, the decision follows *Dellinger*, but in its incomplete analysis, ignores the applicable language from FLSA's definitions of "employer" and "person." It never explains how the "economic control" test that it propounds jives with the statute's plain language (and Congress's intent) holding liable "any person acting directly or indirectly in the interest of an employer," including, under the definition of "person," a "legal representative." (And the *Diaz* facts differ. There, the plaintiff sued the attorney for "advising defendants in the underlying case to file a counter-claim against Plaintiffs and a third-party complaint against Plaintiffs' counsel."[39] Here, Buddenberg is not suing Budzik for litigation actions,

---

[34] *Burlington*, 548 U.S. at 67.
[35] *Burlington*, 548 U.S. at 67.
[36] *See Arias*, 860 F.3d at 1190 (citing *Dellinger*, 649 F.3d at 227).
[37] 649 F.3d 226, 228, 231 (4th Cir. 2011).
[38] *Diaz v. Longcore*, No. 1:17-cv-460, 2017 WL 8790954 (W.D. Mich., Nov. 22, 2017).
[39] *Id.* at *1.

but for Budzik's employment-related retaliatory actions in drawing up bogus employment allegations against her and conducting a sham predisciplinary hearing against her, and recommending subsequent discipline.) *Boddy v. Astec, Inc.,*[40] has even less analysis and is even less applicable. Conducting no statutory analysis, but simply reflexively citing to *Dellinger*, the court deemed a parent company not liable for FLSA retaliation against an employee of the subsidiary. *Boddy* offers no compelling analysis. Other courts, including within the Sixth Circuit, in scenarios more similar to that here (they involve individuals), have allowed FLSA-retaliation suits against individuals who were not the actual employer.[41]

### 3. Whether Budzik had authority over Buddenberg's employment is irrelevant to whether she suffered an adverse employment action, and drawing all inferences in Buddenberg's favor, Budzik's actions influenced the Board's discipline.

Budzik's argument that he "lacked authority to take an adverse action" against Buddenberg misunderstands retaliation doctrine. Under *Burlington Northern*, an adverse action is *anything* that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[42] The Sixth Circuit has held this understanding of an "adverse action" applies to FLSA retaliation, as well.[43] And as the Sixth Circuit has recognized, for "the purpose of retaliation, adverse actions are not limited to employment actions, but encompass a broader range of actions, even outside the employment context, that harm an employee."[44] If such actions can extend "even outside the

---

[40] *Boddy v. Astec., Inc.*, No. 1:11-cv-123, 2012 WL 5507298 (E.D. Tenn. Nov. 13, 2012).

[41] *See, e.g., Montano-Perez v. Durrett Cheese Sales, Inc.,* 666 F. Supp. 2d 894, 901–02 (M.D. Tenn. 2009) (allowing suit to proceed against non-employer defendants who had called immigration authorities on complainants, noting that "it appears clear that, given the broad language of this provision, entities other than an individual's employer can violate the FLSA") (citing *Meek* and others); *Centeno–Bernuy v. Perry,* 302 F. Supp. 2d 128, 135 (W.D.N.Y. 2003) (finding plaintiffs' suit against non-employer who accused them of being terrorists after they brought a FLSA complaint was likely to succeed on the merits, because "the anti-retaliation provision of the FLSA does not apply only to employers; it applies to 'any person'"); *Rivera v. Installation System,* 623 F. Supp. 269, 271 (D.P.R. 1985) (permitting suit against government agency and officials under FLSA, because "Congress intended to include a party within the meaning of 'person' whether or not he is an 'employer'").

[42] *Burlington Northern & Santa Fe Railway v. White,* 548 U.S. 53, 68 (2006).

[43] *See Petit v. Steppingstone, Center for the Potentially Gifted,* 429 F. App'x 524, 537–38 (6th Cir. 2011).

[44] *Id.* at 532 n.3.

employment context," then whether or not Budzik had authority over Buddenberg's employment is irrelevant. In *Arias v. Raimondo*, for example, the Ninth Circuit determined that a lawyer who allegedly called ICE on the plaintiff because the plaintiff brought a FLSA lawsuit, could be liable for retaliation.[45] Other cases have also found those other than the actual employer to be liable, despite not having "authority" over employment.[46] As explained above, FLSA's definition of "employer" includes any person acting directly or indirectly in the employer's interest.

And Budzik's actions as alleged in the First Amended Complaint *were* of the type that would "dissuade a reasonable worker from making or supporting a charge of discrimination." In *Laster v. Kalamazoo*, the Sixth Circuit held, "Facing heightened scrutiny, receiving frequent reprimands for breaking selectively enforced policies, being disciplined more harshly than similarly situated peers, *and forced to attend a pre-determination hearing based on unfounded allegations of wrongdoing* might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."[47]

Here, the allegations of Budzik's actions against Buddenberg are just as bad, if not more egregious. As the complaint alleges (and the proposed amended complaint further details), he lodged baseless performance allegations against her; subjected her to a sham predisciplinary hearing during which he interrogated her based on the false allegations; tried to intimidate her into dropping her EEOC charges, and when she refused to do so, drafted the disciplinary offenses that allegedly supported the board's disciplinary order against her, recommending to the board that the members discipline her based on these false allegations (which they then did); and forced, or influenced the decision to force, Dan Mix to resign (in retaliation for supporting Buddenberg).[48]

---

[45] *Arias*, 860 F.3d at 1192.
[46] *See* above n. 41.
[47] *Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014) (emphasis added);
[48] *See* Compl. ¶¶ 73, 87, 89–91, 95, 98, 156.

Defendant claims the Complaint does not allege he had decision-making authority, but under *Burlington*'s broader definition of "adverse action," actions short of ultimate discipline count. In any case, the Complaint—especially when all inferences are drawn in Buddenberg's favor—alleges that Budzik had input on which the actual decisionmaker relied, and under Seventh Circuit *Jardien v. Winston Network, Inc.*, providing such input is sufficient to establish active involvement creating liability for retaliation.[49]

Under *Burlington*'s low bar for retaliatory actions—and given that FLSA encompasses those who act "directly or indirectly in the interest of the employer"—Budzik's actions expose him to liability.

4. **Budzik's professed concerns about a supposed chilling effect on lawyers ignore that lawyers are capable of retaliation, and should be just as, if not more, accountable.**

Budzik claims a parade of horribles will ensue should the Court allow him to be sued. But allowing Budzik to be sued for retaliation as the statute itself requires will not subject to liability "any attorney who advises, recommends, or supports discipline or termination."[50] The allegations against Budzik are far greater than that he innocently advised his clients or that he sat on the sidelines watching his clients retaliate. The Complaint alleges that he was actively involved in the retaliation, using his professional skills to execute a scheme of retaliation along with Weisdack.

Carving out a special exemption for lawyers as Budzik desires would defy the legislature's purpose to root out *all* retaliation including by "legal representatives," signal they are above the law, and allow clients to use lawyers to do their unlawful deeds for them, shielding the clients from consequences. Lawyers are no less prone to retaliation than anyone else. The difference is that lawyers should know better, and they should thus be held just as accountable—if not more so.

---

[49] *See Jardien v. Winston Network, Inc.*, 888 F.2d 1151 (7th Cir. 1989).
[50] Budzik Mot. Dism. at 9.

**B. Just as Buddenberg has stated an FLSA claim, she has stated an Ohio Rev. Code § 4111.17(D) claim, as Ohio law looks to federal law for the definition of "employer."**

Budzik overlooks Ohio's Constitution and case law when arguing that Buddenberg lacks a claim under Ohio Rev. Code § 4111.17, Ohio's FLSA equivalent (Minimum Fair Wage Standard Act). Section 4111.17(D) states, in relevant part: "No employer shall discriminate against any employee because such employee makes a complaint . . . under this section [i.e., regarding pay discrimination for equal work]." While Budzik does not dispute Buddenberg made a complaint "under this section," he protests that he is not an "employer."

He's wrong. Ohio courts look to the federal Equal Pay Act (part of the FLSA) in interpreting similar state-law provisions.[51] The Ohio Constitution, Article II, Section 34a, which includes an anti-retaliation provision, states that "employer" has the same meaning as in the FLSA. The Ohio Supreme Court has also held that the "Fair Minimum Wage Amendment incorporates the FLSA without any limitation."[52] As discussed above, FLSA's "employer" definition includes "any person acting directly or indirectly in the interest of an employer in relation to an employee…"[53] And "person" includes "legal representative." Budzik is thus liable under § 4111.17(d), as under FLSA.

**C. Budzik acted under color of state law and lacks immunity, as a reasonable person in his shoes would have known Buddenberg's speech was protected under binding Supreme Court precedent.**

**1. Budzik is a state actor, because he worked at the Board of Health's direction, including in performing an administrative, employment-law function.**

Despite Budzik's improperly narrow construction of her Complaint, Buddenberg did *not* plead that Budzik for the purposes of her claims was a state actor *just* because he was an attorney for the Health District. She alleged, rather, that he executed the District's retaliation as the hand of the state,

---

[51] *See Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 161 & n 6 (6th Cir. 2004).
[52] *Haight v. Minchak*, 146 Ohio St.3d 481, 485 (2016).
[53] 29 U.S.C. § 203(d).

and that the District directed him to perform essential state functions under color of law, including taking a direct role in an administrative employment hearing, performing administrative and investigative functions, and actively participating in "making hiring and firing decisions on behalf of the State."[54] Rather than shouldering their burden to take her allegations in her favor, however, Budzik denies them, and misrepresents authority for the proposition that courts "emphatically reject[]" state-actor status for attorneys.[55]

The U.S. Supreme Court has squarely rejected Budzik's proposition.[56] His authorities address a narrower (and irrelevant) issue: whether *simply being an attorney* makes a practitioner a state actor by virtue of being an officer of the court. *Catz*, his lead case (and a since-overruled domestic-relations decision[57]) held that attorneys in private practice cannot "be deemed state actors liable under § 1983 *by virtue of their status as officers of the court*."[58] And the cases he plucks from *Catz's* string-cite also reject efforts to erect a *per se* bar against state-action accountability merely by virtue of representation.[59]

---

[54] *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); Compl. ¶¶ 74, 87, 91, 181.

[55] Budzik Mot. Dism. at 12–13 (quoting *Catz v. Chalker*, 142 F.3d 279, 285 (6th Cir. 1998)).

[56] *Wyatt v. Cole*, 504 U.S. 158, 162 (1992) ("While an action taken by an attorney in representing a client "does not normally constitute an act under color of state law . . . an attorney is still a person who may conspire to act under color of state law in depriving another of secured rights."'); *see also Tower v. Glover*, 467 U.S. 914, 923 (1984) ("We conclude that state public defenders are not immune from liability under § 1983 for intentional misconduct, 'under color of' state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights.").

[57] *E.g. Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015) (overruling jurisdictional basis to entertain domestic-relations dispute).

[58] *Catz v. Chalker*, 142 F.3d 279, 285 (6th Cir. 1998) (emphasis added) (affirming district court's oral ruling that a private person's divorce lawyer was not a state actor in tangled interstate divorce proceedings simply by being an officer of the court").

[59] *Cooper v. Wilson*, 309 F.2d 153, 154 (6th Cir. 1962) ("private practicing attorney" involved in sanity proceedings was "acting as a private lawyer"); *Smith v. Hilltop*, 99 F. App'x 644, 648 (6th Cir. 2004) ("private litigant's attorney who does nothing more than issue a subpoena and oppose a motion to quash brought by the subpoenaed party" is not a state actor). *Otworth v. Vanderploeg* was a summary-judgment case in which "private attorneys representing private citizens . . . were not acting under color of state law." 61 F. App'x 163 (6th Cir. 2003). And the complaint in *Horen v. Toledo* was dismissed because it alleged that attorneys became state actors simply by representing public clients, and *did not* allege that the state directed or controlled the attorneys' actions. 594 F. Supp. 2d 833 (N.D. Ohio 2009).

As the Supreme Court recognized in *Polk*, from which these cases all derive, Budzik's proposition would permit the unaccountable outsourcing of unlawful state action to lawyers trained to know better. The Court cautioned that attorneys can "act under color of state law while performing certain administrative and possibly investigative functions," like "making hiring and firing decisions on behalf of the State."[60]

Yet Budzik ignores that crucial caveat, and Buddenberg's allegations that he not only was a lawyer for the Health District, but performed investigative and administrative human-resources functions, including by conducting an aggressive employment-discipline investigation and hearing, actively participating in investigating and forming its conclusions, and single-handedly effected discrete and unlawful retaliations himself by attempting to strong-arm her into agreeing to crippled employment terms as a condition of reporting her mistreatment to the Board, all at the instruction and in the Health District's stead.[61] On this point, Budzik seems to ignore his own cases too. One ruled that a town attorney's actions, construed in the plaintiff's favor, were "chargeable to the state" when he "adopt[ed] responsibilities akin to those of a city manager."[62] The other denied summary judgment to a township's private lawyer on state-actor grounds because even after discovery and depositions, fact questions remained whether his conduct was "fairly attributable" to the state.[63]

Construed in her favor, Buddenberg's Complaint amply alleges that Budzik did not simply render legal advice to the District, but actively participated in managerial decision-making, including making hiring and firing decisions on the state's behalf, and taking administrative and investigative

---

[60] *Polk*, 454 U.S. at 325 (1981) (holding that public defenders do not become state actors by virtue of representing clients). Indeed, of all the retaliatory actors, employment-lawyer Budzik has the feeblest excuse to be ignorant of the unconstitutional retaliation he helped it execute.

[61] Compl. ¶¶ 74, 87, 91, 181.

[62] *Seitz v. E. Nottingham Twp.*, 2017 WL 2264637, at *3 (E.D. Pa. May 24, 2017).

[63] *Majer v. Twp. of Long Beach*, 2009 WL 3208419, at *9-10 (D.N.J. Sept. 30, 2009).

actions. If Budzik wishes to dispute the extent of his authority and involvement, he must develop facts, not deny or misconstrue Buddenberg's pleadings.

### 2. Buddenberg plausibly alleged that she engaged in protected speech.

Defendant's challenge to the protected status of Buddenberg's speech law simply ignores the Supreme Court's final word on the subject in *Lane v. Franks*.[64] Instead, citing *Garcetti v. Ceballos* and an abrogated pre-*Lane* decision from the Eleventh Circuit, Defendant avers that Buddenberg's reports are unprotected against retaliation because each "clearly owed its existence to her professional responsibilities and concerned internal personnel disputes."[65] But *Lane* scolded the Eleventh Circuit for this overbroad reading of *Garcetti* because speech that "owes its existence" to professional duties is not just protected, but "holds special value *precisely because those employees gain knowledge of matters of public concern through their employment.*"[66]

As the Sixth Circuit has held, it is irrelevant that speech derives from public employment. Defendants must show that *her complaint* proves that *it was her job to make every internal and external report she made,* and that she did so *as part of her ordinary job duties*:

> [A]lthough *Garcetti* carves out an exception to First Amendment protection for speech that "owes its existence to a public employee's professional responsibilities," *this exception "must be read narrowly as speech that an employee made in furtherance of the ordinary responsibilities of his employment."* Or, in *Lane*'s words, "[t]he critical question under *Garcetti* is *whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.*"[67]

But rather than taking her allegations as true and in her favor, as his motion requires,[68] Budzik

---

[64] 134 S. Ct. 2369, 2379 (2014).

[65] Budzik Mot. Dism. at 14; *see also id.* at 13 (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006)).

[66] *Lane,* 134 S. Ct. at 2379 (emphasis added).

[67] *Mayhew v. Town of Smyrna,* 856 F.3d 456, 464 (6th Cir. 2017) (emphasis added); *see also Dibrito v. City of St. Joseph*, 675 F. App'x 593, 597 (6th Cir. 2017) (*Garcetti* must be construed narrowly).

[68] *Handy-Clay v. City of Memphis, Tenn.,* 695 F.3d 531, 542 (6th Cir. 2012) (reversing official-duty determination that "does not read the complaint in the light most favorable to [the plaintiff], as the district court was required to do.").

simply ignores Buddenberg's allegations that her duties as fiscal coordinator did *not* include reporting ethical or policy violations by her superiors, equal-pay concerns, or ongoing retaliation to the Board.[69] As she alleged,

- Much of the misconduct she reported was *not* related to her or her job[70];
- The Board sought *her* out, and convened a special, non-routine hearing to solicit the information she shared, ratifying the public interest in the issues she raised, and promising that she would be protected against retaliation for speaking out of turn[71];
- Even before she raised her concerns to the Board, Defendant Weisdack criticized her for being unduly attentive to policy issues, and that she should focus on the administrative and implementation-related tasks required by her role[72]; and
- When she raised one of her concerns to him, Defendant Weisdack raged against that it wasn't her job to do so.[73]

Construed in her favor, or simply read, Buddenberg's complaint adequately pleads that she spoke in her private capacity in a citizen. As in *Ehrlich v. Kovack*, where this Court correctly denied a similarly ambitious motion to dismiss that failed to cite *Lane*, "there is nothing in the Complaint or its attachments to suggest, that Plaintiff's duties . . . included the reporting of suspected government corruption or misuse of [public] resources."[74] Defendant's gambit is extraordinary because Buddenberg was *criticized* for speaking out on issues beyond her narrow administrative role—the Board did not hire her to accuse it of malfeasance.[75]

Yet Defendants ask this Court to *assume* that her administrative role concealed a secret, sweeping mandate to report their official misconduct directly to the Board,[76] relying solely on *Phillips v. City of*

---

[69] First. Am. Compl. ¶ 14.

[70] *Id.* ¶¶ 21, 27.

[71] *Id.* ¶ 30.

[72] *Id.* ¶ 18.

[73] *Id.* ¶ 25.

[74] *Ehrlich v. Kovack*, 125 F. Supp.3d 638, 665–66 (N.D. Ohio 2015).

[75] *Allard v. Michigan House of Representatives*, 200 F. Supp. 3d 703, 709–10 (W.D. Mich. 2016).

[76] *Compare Walker v. Burkes*, 2017 WL 3962627, at *5 (S.D. Ohio Sept. 8, 2017) (reports outside the direct line of supervision are in capacity as private citizen).

*Dawsonville*,[77] a pre-*Lane* opinion from the very circuit *Lane* reversed because "the Eleventh Circuit read *Garcetti* too broadly."[78] *Phillips* is not only inconsistent with the law of this Circuit, particularly post-*Lane*, but the Eleventh Circuit promptly abrogated it after *Lane*, "disavow[ing]" the very "implied duty" Defendant proposes because it "would eviscerate the role of the First Amendment in protecting public employees who act as whistleblowers," particularly at the pre-discovery stage.[79]

Finally, Budzik resorts to muddling personal capacity and public concern, suggesting that Buddenberg's speech could not have addressed matters of public concern because it concerned public *personnel*. But "[t]he question of whether speech concerns a personnel matter is a question about whether it addresses a matter of public concern, not whether the employee is speaking as a citizen,"[80] and the proposition that reports of misconduct lack public concern because they involve publicly-employed personnel is absurd and wrong.[81]

### 3.  Budzik is not entitled to qualified immunity.

Budzik's qualified-immunity claim requires this Court to determine whether the First Amendment protections for speech as a private citizen provided sufficient notice to a reasonable attorney in his position that lodging unfounded allegations against a public employee, interrogating her in a pre-disciplinary hearing, and recommending disciplinary action against her—all for speaking up about her concerns of pay discrimination, ethical misconduct, and retaliation—was unlawful.

Defendant does not argue that he has qualified immunity because he lacked notice that the items

---

[77] 499 F.3d 1239 (11th Cir. 2007); *see* Budzik Mot. Dism. at 14.

[78] *Lane*, 134 S. Ct. at 2379.

[79] *Carollo v. Boria*, 833 F.3d 1322, 1331 (11th Cir. 2016).

[80] *Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015).

[81] *Handy-Clay*, 695 F.3d at 544 (Plaintiff's "communications to individuals outside her department . . . were related to issues of public concern even though expressed in private discourse"; Plaintiff's "communications alleging corruption and mismanagement by public employees must be construed at this stage of the litigation [on a motion to dismiss] as speech on a matter of public concern."); *Mayhew*, 856 F.3d at 468 (reports of hiring and policy violations by public personnel are matters of public concern).

on which Buddenberg spoke were matters of public concern, or even that his actions were adverse actions. Nor could he. The law has been clearly established since at least 2009 that speaking up about matters of discrimination, including retaliation, as well as ethical misconduct is speech on matters of public concern.[82] The law has also been clearly established since 2006 that an "adverse action" includes anything that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination,"[83] including, since at least 2014 in the Sixth Circuit, being "forced to attend a pre-determination hearing based on unfounded allegations of wrongdoing."[84] Budzik never argues, because he cannot, that he lacked notice that his interrogation of Buddenberg regarding emailing the board her belief that Dan Mix was dismissed because of her reports itself constituted retaliation for speaking up about discrimination.

Budzik's only argument appears to be that taking those retaliatory actions against a public employee reporting on ethical misconduct, discrimination, and retaliation were justified because Buddenberg allegedly was not acting as a private citizen when making her reports—and that Budzik reasonably believed as much under the state of the law at the time.[85] But the seminal case since 2014 has been *Lane v. Franks*, which held that the critical question is whether the speech is "ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[86] And even before that, in 2012, the Sixth Circuit in *Handy-Clay v. City of Memphis* held on facts similar to those

---

[82] *Kindle v. City of Jeffersontown, Ky.*, 374 F. App'x 562, 568 (6th Cir. 2010) ("This court has consistently held that speech on . . . the efficacy and operations of public agencies and allegations of misconduct by public officials . . . addresses a matter of public concern."); *Boulton v. Swanson*, 795 F.3d 526, 532 (6th Cir. 2015) ("speech addresses a matter of public concern when it alleges corruption and misuse of public funds" (citation omitted); *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 897 (6th Cir. 2003) ("The community has an interest in knowing . . . when the district does not follow state law or its own hiring practices."); *Whitney v. City of Milan*, 677 F.3d 292, 298 (6th Cir. 2012) ("Allegations of racial discrimination by a public entity 'inherently' involve a matter of public concern.") (quoting *Miller v. City of Canton*, 319 F. App'x 411, 416 (6th Cir. 2009)).

[83] *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 68 (2006).

[84] *Laster v. City of Kalamazoo*, 746 F.3d 714, 732 (6th Cir. 2014).

[85] *See, e.g., Stinebaugh v. Wapakoneta*, 630 F.App'x 522, 525 (6th Cir. 2015).

[86] *Lane*, 134 S. Ct. at 2379.

here, that nothing in the employee's public-records-coordinator job duties included reporting on government corruption, including to individuals outside her department.[87]

Budzik, an employment lawyer with public-sector clients, cannot seriously argue that—given the state of the law in early 2017—he reasonably believed that Buddenberg, in her administrative role as fiscal coordinator, was acting within her *ordinary* duties when reporting to the Board about her *boss's* potential unethical conduct, about his failure to correct discrimination, and the anguish of her own retaliation or that of Dan Mix. Especially when viewing all facts in Buddenberg's favor, Budzik is not immune.

### D. The statutes' plain language permits Buddenberg to bring her state statutory claims against Budzik; and even if a qualified privilege meant for the legal-malpractice context applied, she could show malice, which just means "fraud, bad faith, collusion[,] or other malicious conduct."

Defendant's argument that Buddenberg lacks "standing" to bring various state statutory claims against him,[88] wrongly attempts to use a common-law doctrine meant for legal-malpractice claims to supplant the legislature's choice to extend liability to all those who meet the statutory criteria. And even if that legal-malpractice qualified-immunity doctrine applied—which it does not—as shown below, even under that doctrine, the claims against Budzik survive.

To begin with, the statutes' plain language creates liability encompassing attorney-defendants. The Ohio General Assembly used the language "no person" or "any person" to extend liability to anyone falling within their criteria:

- (Claim 6) §§ 2921.05 - retaliation because public servant discharged her duties – "no person, purposely and by unlawful threat of harm…., shall retaliate against a public servant…"
- (Claim 8) § 2921.03– intimidation using a false writing – "no person, knowingly and by filing…a materially false or fraudulent writing… shall attempt to influence…."

---

[87] *Handy-Clay v. City of Memphis*, 695 F.3d 531, 542 (6th Cir. 2012). *See also Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 756, 768 (6th Cir. 2010) (court administrator's reports to her supervisor regarding judge's religious commentary constituted "extraordinary rather than everyday communication").
[88] Budzik Mot. Dism. at 16.

- (Claim 9) §§ 4112.02(J), aiding and abetting discrimination – "it shall be an unlawful discriminatory practice … for any person to aid, abet, …"

- (Claim 4) - § 4111.17 – "No employer [defined as "any person acting directly or indirectly in the interest of an employer"] shall discriminate against any employee because such employee makes a complaint or institutes, or testifies in, any proceeding under this section."

This language extends to lawyers. In a case under an Ohio statute with the same "no person" language, the Sixth Circuit allowed a claim to go forward against lawyers. Specifically, in *Nix v. O'Malley*, the plaintiff sued Cleveland councilman Patrick O'Malley and O'Malley's legal counsel Weston Hurd under Ohio's wiretapping statute, for using and disclosing the contents of illegally intercepted communications.[89] The statute, Ohio Rev. Code § 2933.52, states, in relevant part, "No person purposely shall . . . [d]isclose, or attempt to disclose, to any other person the contents . . . of any wire or oral communication, knowing or having reason to know that the contents . . . [were] obtained through [unlawful] interception of the wire or oral communication. . .."

The law-firm defendant argued, by analogy to the common-law privilege protecting attorneys who republish defamatory statements, that it was immune from suit for disclosures made in summary-judgment motions filed in the judicial proceeding. The Court found otherwise. The Court, while it had allowed a "defense exception" for a defendant's disclosures to his counsel to prepare for the defense, noted, regarding the public filings, that "this proposed immunity *contravenes the plain language of federal and state wiretap statutes*."[90] Noting the Ohio legislature's intent to ban the disclosure of illegally intercepted communications, because of "the damage to plaintiffs' privacy interests upon each republication," the Court declared that "'[t]here is nothing in the Act which affords attorneys special treatment.' . . . Zealous defense of a client does not permit law-breaking."[91]

The Sixth Circuit's holding that attorneys can be sued under an Ohio statute extending to any

---

[89] 160 F.3d 343, 345 (6th Cir. 1998).

[90] *Id.* at 352 (emphasis added).

[91] *Id.* (quoting *United States v. Wuliger*, 981 F.2d 1497, 1505 (6th Cir.1992)).

"person" finds company in a retaliation decision out of this Court. In *Reich v. State Credit Inc.,*[92] this Court (Judge Carr) addressed whether an employer's agent could be liable for retaliation under the federal Occupational Health and Safety Act, 29 U.S.C. 660(c)(1). Given the statutory language—"no *person* shall discharge or in any manner discriminate"—the Court determined that being the employer's "agent" did not absolve the defendant of liability. The same analysis applies here. Under *Nix* and *Reich,*[93] the plain language of the Ohio statutes under which Buddenberg has brought claims permits her to sue Budzik.

Defendant wrongly points to a privilege applicable in the legal malpractice context to argue that Buddenberg has no standing to bring these statutory claims. First, as *Nix* explains, the statute's plain language trumps any common-law privilege that would purportedly immunize attorneys. Second, this doctrine has no applicability to Buddenberg—unlike in Defendant's cases,[94] she is not suing as a third party to vindicate the rights of someone else harmed by the attorney; she is suing to vindicate her own rights, because she herself was harmed by the attorney's actions. Thus she has *first-party* standing, and the statutes under which she brings her claims give her a cause of action to redress the harm she has experienced.

But even if some general immunity for lawyers imported from the legal-malpractice context applied in this context—which it does not, given the Ohio legislature's clear intent—Buddenberg can overcome it. Defendant cites the wrong standard for "malice." He cites a non-binding 10th District case for the proposition that "malice" requires an "ulterior motive separate and apart from

---

[92] 897 F. Supp. 1014, 1016 (N.D. Ohio 1995).

[93] *Cf. also Rosania v. Taco Bell of America, Inc.,* 303 F. Supp.2d 838, 889 (N.D. Ohio 2004) (holding that litigation privilege did not bar FMLA retaliation claim based on counterclaim: "Plaintiff should be able to avail herself under the anti-retaliation provision since the language of the statute itself supports her claim.") (quoting *Gliatta v. Tectum, Inc.,* 211 F. Supp.2d 992 (S.D. Ohio 2002)).

[94] *E.g., Ryan v. Wright,* 2007-Ohio-942, 2007 WL 661815 (Ohio App. 10th Dist. Mar. 6, 2007) (legal malpractice); *Simon v. Zipperstein,* 512 N.E.2d 636 (Ohio 1987) (legal malpractice); *Swiss Reinsurance Am. Corp., Inc. v. Roetzel & Andress,* 837 NE.2d 1215 (Ohio App. 9th Dist. 2005) (legal malpractice); *Shoemaker v. Gindelsberger,* 887 NE.2d 1167 (Ohio 2008) (legal malpractice).

the good-faith representation of the client's interests."[95] As the Southern District of Ohio held in

*Luciani v. Schiavone*, "Ohio law does not require that a plaintiff prove such a motive…"[96] Instead, the

Ohio Supreme Court in *Simon v. Zipperstein* (Defendant's own case) suggested malice can be shown

by "special circumstances such as fraud, bad faith, collusion or other malicious conduct,"[97] and

courts from the Ohio Supreme Court to the Sixth Circuit have found malice exists (or would exist)

under such circumstances.[98] As in those cases, allegations that Budzik colluded with the other

defendants, in bad faith, to deprive Buddenberg of her legal and constitutional rights, by, for

example, conducting a sham predisciplinary hearing against her, are enough to constitute malice.

### E. Statutory text and structure, and practical considerations, show that Ohio Rev. Code § 2307.60 requires no criminal conviction.

Both Budzik and the Geauga Defendants challenge the viability of Buddenberg's claims under

certain state statutes (§ 2307.60 and § 2921.03) allowing civil liability for criminal acts, arguing these

statutes require a criminal conviction before civil liability can attach. As shown next, statutory text

and structure, and practical considerations support the opposite conclusion, as does the Ohio

---

[95] Budzik Mot. Dism. at 18.

[96] No. C-1-97-272, 2001 WL 1842457, at *6 (S.D. Ohio Jan. 2, 2001).

[97] 32 Ohio St.3d 74, 76, 512 NE.2d 636, 638 (1987).

[98] *See, e.g., LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 872 N.E.2d 254, 2007-Ohio-3608 (2007) (in legal-malpractice matter, permitting suit against attorney given allegations of conflict of interest, as well as that the attorneys had "colluded" with other defendants "to impose undue pressure" on decedent regarding her will); *Luciani v. Schiavone*, 2001 WL 1842457, at *7 (allowing abuse-of-process claim against attorney because attempting to obtain relief for their client in a court attorneys knew lacked power to grant that relief could establish bad faith); *Petrey v. Simon*, 19 Ohio App.3d 285, 288, 484 N.E.2d 257 (1st Dist. 1984) (allowing abuse-of-process claim against attorney to go to jury: genuine issue of fact existed whether lawyer failed to act in good faith in withholding wages in child-support matter, where he proceeded to withhold plaintiff's property even after having notice that plaintiff was not the party sought); *Thompson v. R&R Service Systems, Inc.*, 10th Dist. Franklin No. 96APE10-1277, No. 96APE10-1278, 1997 WL 359325, at *11 (June 19, 1997) (allowing abuse-of-process suit against attorney who "assist[ed] and encourage[d]" her clients to "pursue[ ] criminal action for purely civil relief," which involved "manufacturing the elements necessary to establish a criminal offense"; suggesting jury could find lawyer "essentially advised her clients to breach their contract" with plaintiff); *Firestone v. Galbreath*, 976 F.2d 279, 287 (6th Cir. 1992) (suggesting that allegations attorney defendants "assisted" their clients in "efforts to defraud" grandmother sufficiently alleged malice).

Supreme Court's decision in *Jacobson v. Kaforey*.[99]

### 1. Statutory text and structure, and case law, support that § 2307.60 provides a civil action not predicated on any criminal process.

"Ohio Rev. Code § 2307.60(A)(1), by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act."[100] The subsection provides,

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

Contrary to Defendants' argument, nothing in this subsection suggests that the civil action must follow a criminal conviction. Criminal "act" does not mean "conviction." "Criminal act" is simply an element of an offense that must be proven, similar to how a federal civil RICO claim is proven with "predicate criminal acts," with or without convictions on those charges.

The statute's structure bolsters this reading. To prevail on a § 2307.60(A)(1) claim, a plaintiff must show that (1) the defendant engaged in a criminal act and (2) the criminal act injured the plaintiff "in person or property." Recognizing that a conviction can help prove that a criminal act occurred, the next subsection, § 2307.60(A)(2), describes when and how a conviction can be used to prove the first element.[101] Although that subsection provides when a conviction *may* be used to

---

[99] 75 N.E.2d 203, 206 (Ohio 2016). If this Court is remotely tempted to grant Defendants' motion for judgment on the pleadings or motion to dismiss based on the lack of a criminal conviction against Defendants, Buddenberg urges the Court to certify a question of state law to the Ohio Supreme Court under Rule 9.01 of the Ohio Supreme Court Rules of Practice, as she will set forth in a separate, forthcoming alternate motion on the issue. *See, e.g., Garr v. Warden, Madison Corr. Inst.*, 933 N.E.2d 1063 (Ohio 2010); *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 927 N.E.2d 1092 (Ohio 2010). Whether § 2307.60(A)(1) requires a conviction is an important issue of Ohio law, particularly as *Jacobson* has shifted how Ohio courts approach the statute. Certification would allow the Ohio Supreme Court to confirm to this Court that § 2307.60(A)(1), by its plain language, does not establish a conviction requirement.

[100] *Jacobson v. Kaforey*, 75 N.E.2d 203, 206 (Ohio 2016).

[101] (A)(2) reads in relevant part: "A final judgment of a trial court [but not a plea of no contest] . . . that adjudges an offender guilty of an offense of violence punishable by death or imprisonment in excess of one year, when entered as evidence in any subsequent civil proceeding based on the criminal act, shall preclude

prove a criminal act, nowhere does it state that a conviction *must* be used to prove a criminal act. Thus the General Assembly allowed—without mandating—evidence of conviction to prove § 2307.60 claims. Rewriting the statute to include a conviction requirement would undermine the legislative intent embodied in the statute's plain language.

Defendants argue that § 2307.60(A)(1) contains a conviction requirement because it does not expressly denounce it. They note that two other statutes, § 2307.61(G)(1) and § 2307.50, state that victims may recover regardless of whether the perpetrator has been convicted. Thus, Defendants argue, the General Assembly knew how to expressly disclaim a conviction requirement but intentionally chose not to do so in § 2307.60(A)(1).[102]

But a stronger, countervailing canon of statutory interpretation holds that a court should not "read a phrase into the statute when [the legislature] has left it out."[103] If the Ohio legislature intended to condition liability under § 2307.60(A)(1) on a criminal conviction, it could have easily stated so in the statute. (It did, for example, in § 2923.31(I)(3), which provides for when conduct violating states' laws can be considered "corrupt activity.")

And § 2307.61 *derives its* right of action from § 2307.60 ("If a property owner brings a civil action *pursuant to division (A) of section 2307.60 of the Revised Code* to recover damages…") (emphasis added). If § 2307.60, the source, required a criminal conviction, then how could § 2307.61, the derivative, offer a right of action without one? Defendants' own theory undercuts itself.

---

the offender from denying in the subsequent civil proceeding any fact essential to sustaining that judgment, unless the offender can demonstrate that extraordinary circumstances prevented the offender from having a full and fair opportunity to litigate the issue in the criminal proceeding or other extraordinary circumstances justify affording the offender an opportunity to relitigate the issue. . ."

[102] *See, e.g.,* Geauga Defs.' Mot. Judgment on the Pleadings, (Doc. # 20-1), at 3–4.

[103] *See, e.g., A. Philip Randolph Institute v. Husted*, 838 F.3d 699 (6th Cir. 2016) (quoting *Keene Corp. v. United States,* 508 U.S. 200, 208 (1993)).

2. **The Ohio Supreme Court's *Jacobson v. Kaforey* decision—and other case law—undercuts the proposition that civil recovery for criminal acts requires a conviction.**

In 2016, breaking with the majority of Ohio appellate courts that had found otherwise, the Ohio Supreme Court in *Jacobson v. Kaforey* held that Ohio Rev. Code § 2307.60 creates an *independent* civil cause of action for crime victims to seek monetary relief.[104] What is significant about *Jacobson* here is that the court allowed the action to proceed even though none of the defendants had been prosecuted or convicted of the crimes for which Ms. Jacobson sought civil recovery (15 years had passed since the alleged criminal acts, and the statute of limitations on at least two actions had long since run). The Ohio Supreme Court, like the U.S. Supreme Court, declines to consider issues it deems "hypothetical, academic, or dead."[105] Yet the court considered the question raised by Ms. Jacobson's claim and definitively recognized that she could pursue it—then remanded the cause to the trial court for further proceedings.[106] The court thus signaled that no conviction is needed to maintain a civil claim under § 2307.60(A)(1).

Other courts have also signaled that no conviction is required.[107] And of the cases Defendant cites holding otherwise,[108] only one, *Jane v. Patterson*,[109] occurred post-*Jacobson*, and that case dismissed the § 2307.60 claim without referring to *Jacobson* or any other case decided by an Ohio state court—despite the practice among federal courts to try to determine how the Ohio Supreme Court, if presented with the issue, would resolve it.[110]

---

[104] *Jacobson*, 75 N.E.2d at 206.

[105] *State ex rel. Cincinnati Enquirer v. Hunter*, 24 N.E.3d 1170, 1171 (Ohio 2014) (per curiam) (quoting *In re L.W.*, 861 N.E.2d 546, 550 (Ohio Ct. App. 2006)).

[106] *Jacobson*, 75 N.E.2d at 207.

[107] *See Chem. Bank v. Kausmeyer*, No. 4:15CV1850, 2016 U.S. Dist. LEXIS 170659, at *19 (N.D. Ohio Dec. 9, 2016); *see also Wesaw v. City of Lancaster*, No. 2:2005cv0320, 2005 U.S. Dist. LEXIS 36691, at *19–19 (S.D. Ohio Dec. 15, 2005); *Cartwright v. Batner*, 15 N.E.3d 401, 422 (Ohio Ct. App. 2014).

[108] *See A.A. v. Otsego Local Schools Board*, 3:15-cv-1747, 2017 WL 7387261 (N.D. Ohio, Dec. 21, 2016); *Ortiz v. Kazimer*, 1:11-cv-1521, 2015 WL 1400539 (N.D. Ohio Mar. 26, 2015). (Neither contains analysis of the issue.)

[109] 1:16-cv-2195, 2017 WL 1345242 (N.D. Ohio Apr. 12, 2017).

[110] *Bash v. Textron Fin. Corp.*, 834 F.3d 651, 671 (6th Cir. 2016) (citations omitted).

### 3. Statutory text and structure similarly support that § 2921.03 requires no criminal conviction before a victim may recover in a civil action.

Like § 2307.60, Ohio Rev. Code § 2921.03, requires no conviction before allowing civil recovery for intimidation. Section (A) first describes the prohibited conduct—knowingly using a "materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner" to "attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty." Then, in separate subsections, § 2921.03 provides for criminal liability and civil liability against those who engage in such conduct:

> (B) Whoever violates this section is guilty of intimidation, a felony of the third degree.

> (C) A person who violates this section is liable in a civil action to any person harmed by the violation for injury, death, or loss to person or property incurred as a result of the commission of the offense. . . . A civil action under this division is not the exclusive remedy of a person who incurs injury, death, or loss to person or property as a result of a violation of this section.

The General Assembly saw fit to expressly provide both criminal and civil consequences for those who engage in it (and without making one dependent or contingent on the other).

Courts applying this statute have allowed claims to proceed with no conviction. In *Jamison v. Galena*, an Ohio appeals court reversed summary judgment on an intimidation claim under Ohio Rev. Code § 2921.03(C)—requiring no underlying criminal conviction or charge.[111] In *Fusion Oil, Inc. v. American Petroleum Retail, Inc.*, the Northern District of Ohio permitted an intimidation claim to proceed over a motion to dismiss even though complaint did not allege a criminal conviction.[112]

The structure also belies Defendants' insistence that a conviction is required. If "violates this section" means fulfilling the remainder of the entire statute—as Defendants imply it does regarding subsection (C)—then must a person similarly be found liable under (C) regarding civil liability before being found guilty of a felony under (B)? Of course not. Such a reading would cause a paradoxical

---

[111] *See* 38 N.E.3d 1176, 1189–90 (Ohio Ct. App. 2015).
[112] Nos. 3:05CV7434 and 3:06CV7018, 2008 U.S. Dist. LEXIS 13725, at *2–3 (N.D. Ohio Feb. 13, 2008).

feedback loop in which criminal and civil liability would both depend on each other, *ad infinitum*, making the statute impossible to apply.[113]

Defendants' invocation of *Slorp v. Lerner*,[114] which addressed language under the *falsification* statute, is likewise futile. As mentioned, cases under the actual statute at hand permitted cases to proceed with no criminal conviction. A case interpreting identical language under the sham-legal-process statute, § 2921.52(E), *Northrup v. City of Toledo Police Div.*, found the same: "This purported condition precedent is not supported by the text of the statute, which states '[a] person who violates this section is liable in a civil action …'; *there is no requirement that a person be found guilty in a criminal proceeding before civil liability attaches*."[115] (And §2913.01 defines the falsification statute's "offense," on which the *Slorp* court's analysis turned, as a "violation." Violations can occur without conviction.)

### 4. Practical considerations and statutory purpose show that the legislature did not intend to impose an unwritten conviction requirement in § 2307.60.

The procedural complexities raised by hinging a civil claim on a criminal conviction undercut any claim the legislature intended to impose such a requirement without *stating* it. While a conviction offers compelling proof of an offense, the inverse is not true: a conviction's absence doesn't establish innocence of a criminal "act." Many factors go into prosecutors' decisions about whether to pursue a certain criminal matter, and then how doggedly it is pursued. Many factors are unrelated to the merits (e.g., limited prosecutorial resources, a target's willingness to plead guilty, the higher burden of proof in criminal cases, politics, priorities, whim). Insisting on a criminal conviction,

---

[113] *See Jacobson*, 75 N.E.2d at 206; *see also MacDonald v. Bernard*, 438 N.E.2d 410, 413 (Ohio 1982) (citing *Black-Clawson Co. v. Evatt*, 38 N.E.2d 403, 408 (Ohio 1941)) (rejecting dissociative method of statutory interpretation ignoring statutes' complete context). *See also* Star Trek Liar Paradox (available at https://www.youtube.com/watch?v=BFy4zQlWECc, last accessed Jun. 8, 2018).
[114] 587 F. App'x 249 (6th Cir. 2014).
[115] No. 3:12-cv-01544, 2015 U.S. Dist. LEXIS 102587, *5 (N.D. Ohio Aug. 5, 2015) (emphasis added) (quoting Ohio Rev. Code § 2921.52(E)); *see also Gibson v. Rose*, No. 1:12 CV 1509, 2012 U.S. Dist. LEXIS 101604, at *27 (N.D. Ohio July 23, 2013) (recognizing that Ohio Rev. Code § 2921.52(E) authorizes private civil claim for damages but dismissing pro se plaintiff's complaint for failing to allege sham legal process).

initiated and secured by a third party, to enable a civil claim forces prosecutors to be pre-approvers of that claim—even when they have no interest in it or lack the resources to pursue it.

Requiring a conviction effectively requires civil plaintiffs to meet the beyond-a-reasonable-doubt standard of proof rather than the preponderance standard that applies in the civil context. Civil claims are held to a lower standard of proof because they aim to compensate people for losses suffered by requiring payment of money damages; criminal cases, by contrast, entail much harsher consequences. Yet Defendants' interpretation of the statute would hold civil plaintiffs seeking money damages to an initial beyond-a-reasonable-doubt threshold. (And as the Court knows, guilty pleas might result in convictions that, because of plea bargaining, don't resemble the actual acts that should be pleaded civilly.)

This burden-of-proof standard creates further dissonance given where § 2307.60 appears within the Ohio Revised Code. In enacting this general statute providing civil liability for criminal acts, the General Assembly placed it within the Revised Code title dedicated to common pleas courts (Title 23)—specifically in Chapter 2307: Civil Actions—rather than the separate title for crimes and criminal procedure (Title 29). Structuring this claim within the Civil Action chapter shows that the General Assembly intended to create an independent *civil* action (with a civil burden of proof)—not some derivative of the criminal-justice process, and to *protect* victims, not deprive them.

Construing § 2307.60 to apply only to crime victims whose perpetrators have been convicted would deny civil recovery to those who need it most. Criminal convictions typically carry an order of restitution for actual damages inflicted, making victims' whose perpetrators *are* criminally convicted less likely to need to pursue a separate civil recovery. Meanwhile, those crime victims whose perpetrators are not prosecuted are the ones who most need the civil remedy. Why would the legislature further privilege those who have seen their perpetrators criminally convicted, while excluding other victims?

Another problem stems from a criminal action's timing. One must consider whether the General Assembly intended to make crime victims wait through an often lengthy criminal process, including appeals and collateral attacks, before seeking civil relief. If waiting for a final, irrevocable criminal conviction were actually required, a victim could have to wait years before pursuing a civil claim with an ambiguous statute of limitations—assuming they independently track the criminal matter. Problems also arise when a conviction is reversed on appeal, or undermined by a collateral attack. Does a successful ineffective-assistance-of-counsel claim require a contingent civil claim be vacated? When would the statute of limitations commence on a § 2307.60 claim: after a defendant was not only convicted but had exhausted all appeals? After a federal court denied habeas-corpus relief?

The myriad problems and impossibilities created by imposing a non-existent conviction requirement compels the conclusion that the legislature chose not to require a conviction, creating instead a civil claim that would proceed on its own merits as purely civil litigation.

## V.    CONCLUSION

Buddenberg does not sue Budzik lightly. But his actions rose beyond that of a lawyer just counseling his client from the sidelines or engaged in litigation. He actively participated in retaliating against her, not least through his lead, human-resources role in interrogating her at the sham predisciplinary "hearing" while knowing allegations against her were unfounded. His actions were even more egregious considering he was using his professional skills and position to harm her. Neither Congress nor Ohio's General Assembly intended to permit lawyers in such positions to retaliate with impunity, hiding behind a law license. The Court should deny Budzik's motion to dismiss. And it should deny the Geauga Defendants' motion for judgment on the pleadings, too, because they are subject to liability for criminal acts under § 2307.60's plain language.

Respectfully submitted,

_/s/ Sandhya Gupta_
Subodh Chandra (0069233)
Donald P. Screen (0044070)
Sandhya Gupta (0086052)
Patrick Kabat (NY Bar No. 5280730)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
216.578.1700 Phone
216.578.1800 Fax
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com
Sandhya.Gupta@ChandraLaw.com
Patrick.Kabat@ChandraLaw.com

_Attorneys for Plaintiff Rebecca Buddenberg_

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed with the Court's electronic-filing system on

June 8, 2018, where it can be accessed by all counsel of record.

/s/ *Sandhya Gupta*
Sandhya Gupta

*One of the attorneys for Plaintiff Rebecca Buddenberg*