**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Rebecca Buddenberg,** | ) | CASE NO. 1:18-cv-00522 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JUDGE DAN AARON POLSTER** |
| **v.** | ) | |
| | ) | |
| **Robert K. Weisdack, et al.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

Before the Court are two motions: Defendant James Budzik's Motion to Dismiss, Doc #: 14, and the remaining defendants' ("District Defendants") joint Motion for Partial Judgment on the Pleadings, Doc #: 20. For the following reasons, Budzik's Motion to Dismiss and the District Defendants' Motion for Partial Judgment on the Pleadings are **DENIED WITHOUT PREJUDICE.**

I.  Background

On March 6, 2018, Plaintiff Rebecca Buddenberg filed the instant civil rights action, pursuant to both federal and state anti-discrimination laws. Doc #: 1. On March 12, 2018, she filed an Amended Complaint. With the Court's permission, Buddenberg filed a Second

Amended Complaint on June 18, 2018.[1]  Buddenberg asserts claims against eight defendants: the Geauga County Health District (the "District"), Geauga County Health Commissioner Robert K. Weisdack, District employee Alta Wendell, the District's attorney James Budzik, and Geauga County Board of Health (the "Board") members Timothy Goergen, David Gragg, Catherine Whitright, and Christina Livers (collectively, the "Board Members").  Compl. ¶¶ 4-8.  On May 3, 2018, Budzik filed a motion to dismiss all six claims against him.  Doc #: 14.  On May 11, 2018, the District Defendants filed a joint motion for partial judgment on the pleadings.  Doc #: 20.  Buddenberg filed an Opposition on June 8, 2018.  Doc #: 29.  Budzik and the District Defendants filed their Replies on June 22, 2018.  Doc #: 32 and 33.

## II. Facts

On a motion to dismiss, the court construes all well-pleaded facts in the light most favorable to the plaintiff.  *Johansen v. Presley*, 977 F. Supp. 2d 871, 876 (W.D. Tenn. 2013).

Buddenberg was employed by the District from February 2, 2015 to May 27, 2017.  Compl. ¶ 11.  She worked as the District's fiscal coordinator until her March 21, 2017 demotion.  *Id.*  As fiscal coordinator, Buddenberg was responsible for various aspects of the District's fiscal management and human resources.  *Id.* ¶¶ 12-13.  Her ordinary duties did not include reporting ethical and policy violations to the Board.  *Id.* ¶ 14.  Commissioner Weisdack hired Buddenberg and was her direct supervisor—except from April 2016-February 2017, when Dan Mix was Buddenberg's direct supervisor.  *Id.* ¶ 15.  Mix reported direct to Commissioner Weisdack.  *Id.* ¶ 16.  Buddenberg received positive performance evaluations and was well-liked by her co-workers for the first year and a half that she worked at the District.  *Id.* ¶¶ 17-19.

---

[1] All citations throughout this Opinion are to the Second Amended Complaint, however, as the Court intimated in its June 1, 2018 Order, Doc #: 30, it does not include in this Opinion any new allegations presented for the first time in the Second Amended Complaint.

2

On October 24, 2016, Buddenberg reported to the Board that Commissioner Weisdack had engaged in unequal pay practices and ethical misconduct, and that he failed to comply with the District's personnel policies. Compl. ¶ 26. She submitted a written report to the Board detailing her concerns on November 13, 2016. *Id.* ¶ 32. Within less than forty-eight hours of her initial report, Commissioner Weisdack instructed Mix to change Buddenberg's working hours. *Id.* ¶ 33. Buddenberg had negotiated flexible hours to accommodate getting a Bachelor's degree and taking care of her grandson after work. *Id.* Commissioner Weisdack provided no explanation for the change in Buddenberg's work schedule and did not adjust any other employee's schedule, including those who had similarly flexible hours. *Id.* ¶¶ 34-35. As a result, Buddenberg was forced to quit school and could no longer provide adequate childcare for her grandson. *Id.* ¶ 33. Mix told Buddenberg that Commissioner Weisdack changed her hours because he was mad at her for going to the Board and he wanted to get rid of her. *Id.* ¶ 36. Commissioner Weisdack began threatening Buddenberg and disparaging her to her co-workers. *Id.* ¶ 37.

Buddenberg communicated Commissioner Weisdack's retaliatory behavior to the Board, both orally and in writing, on several occasions. *Id.* ¶ 40. The Board took no action to protect Buddenberg and Commissioner Weisdack's campaign of retaliation continued. In January 2017, Mix was forced to resign for supporting Buddenberg. *Id.* ¶ 62. Buddenberg reported Commissioner Weisdack's retaliation toward Mix to Board Member Livers on February 1, 2017. *Id.* ¶ 64. On February 15, 2017, Buddenberg reported the retaliation to the EEOC. *Id.* ¶ 67. The District received notice of her EEOC filing on February 24, 2017. *Id.* ¶ 68. Four days later, Commissioner Weisdack issued Buddenberg a Notice of Proposed Disciplinary Action (the "Notice"), alleging eight policy violations and setting a hearing for March 3, 2017. *Id.* ¶ 72.

3

Budzik helped Commissioner Weisdack draft the Notice. *Id.* ¶ 73. In issuing the Notice, the District failed to comply with its own progressive disciplinary policy. *Id.* ¶¶ 77-79. Further, all of the allegations against Buddenberg were baseless or applied only against Buddenberg. *Id.* Budzik conducted the March 3, 2017 hearing, knowing that Commissioner Weisdack had retaliated against Buddenberg for protected activity and that all policy violation allegations against her were baseless. *Id.* ¶ 87.

After the nearly two-hour long hearing, Budzik offered to settle the matter if Buddenberg would accept a demotion, a pay reduction of nearly $1,000/month, and drop all retaliation claims, including her EEOC charge. *Id.* ¶ 94. At a March 7, 2017 Board meeting, Budzik recommended that the Board take disciplinary action against Buddenberg based on the allegations that he knew to be false and were rebutted by Buddenberg during the March 3, 2017 hearing. *Id.* ¶ 98. On March 16, 2017, the District issued an Ohio Revised Code § 124.34 Order ("Order"), drafted by Commissioner Weisdack and Budzik, finding Buddenberg guilty of nearly all of the allegations in the Notice. *Id.* ¶ 99. Buddenberg was suspended for three days, demoted to a clerical position, and her pay was cut nearly in half. *Id.* ¶ 100 Commissioner Weisdack continued to retaliate against Buddenberg until she resigned from the District on May 27, 2017. *Id.* ¶ 128.

### III. Legal Standard

The same standard for deciding a Rule 12(b)(6) motion to dismiss applies to a Rule 12(c) motion for judgment on the pleadings. *Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011). A 12(b)(6) motion tests the sufficiency of the complaint. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

4

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**IV.     Discussion**

Budzik moved to dismiss Claims 3-7 and 9 against him. The District Defendants moved to dismiss Claims 6-8 against them. The Court will address each claim in turn.

**A.     Fair Labor Standards Act ("FLSA") Retaliation (Claim 3)**

Budzik first argues that Buddenberg cannot bring an FLSA retaliation claim against him because he is the District's outside legal counsel and not her employer. Mot. 5. The anti-retaliation provision of the FLSA prohibits "any person" from "discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA.]" 29 U.S.C. § 215(a)(3). The FLSA defines a "person" as "an individual, partnership, association, corporation, business trust, *legal representative*, or any organized group of persons." 29 U.S.C. § 203(a) (emphasis added). Thus, by its plain language, § 215(a)(3) prohibits legal representatives like Budzik from retaliating against employees. However, § 215(a)(3) only makes retaliatory conduct unlawful; it does not address the penalties for a person engaging in retaliation. The penalties for violating § 215(b)(3) are delineated in § 216. 29 U.S.C. § 216. Section 216(b) grants an employee a private right of action against any "employer" who violates § 215(a)(3). 29 U.S.C. § 216(b). So, while "any person" is proscribed from retaliating under § 215(a)(3), an employee can only bring a civil retaliation claim against an "employer." An "employer" is defined by the FLSA as "any person acting *directly or indirectly in the interest of an employer* in relation to an employee." 29 U.S.C. § 203(d) (emphasis added).

5

There is no Sixth Circuit authority on the issue of whether outside counsel can be sued by an employee as an "employer" for retaliation under the FLSA. Accordingly, the Court has determined to deny the motion to dismiss at this time until there is a factual record developed on precisely what, if any, role Budzik played in the decision to discipline Buddenberg. Budzik may renew his legal challenge to this claim after discovery has concluded by filing a motion for summary judgment.

### B. State Law Equal Pay Discrimination (Claim 4)

Budzik claims that Buddenberg cannot state a claim under Ohio's discrimination statute, ORC § 4111.17, because he is not her employer. Mot. 18. Ohio law prohibits "employers" from discriminating in the payment of wages. ORC § 4111.17(A). "Employer" is defined in Article II, Section 34a of the Ohio Constitution as having the same meaning as under the FLSA. *See* ORC § 4111.02 and Ohio Const. Art. II, § 34a. Thus, whether Budzik is an employer under ORC § 4111.17 is dependent upon whether he is an employer under the FLSA, which the Court has declined to determine at this time.

### C. First Amendment Retaliation (Claim 5)

Next, Budzik argues that Buddenberg cannot state a First Amendment retaliation claim against him because he is not a state actor, Buddenberg's speech was not protected, or, in the alternative, Budzik is entitled to qualified immunity.

#### 1. State Actor

To state a 42 U.S.C. § 1983 claim, a plaintiff must allege that a person acting under color of state law deprived her of a federal right. *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 490 (6th Cir. 2002). "In order for a private actor, such as private attorneys, to become 'state actors' for purposes of § 1983, the private actor must be 'jointly engaged with state officials in

6

[a] prohibited action' and be 'a willful participant in joint activity with the State or its agents.'" *Wilder v. Swann*, No. 3:11-cv-93, 2011 WL 4860041 at *8 (E.D. Tenn. Oct. 13, 2011) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).[2] "[A] private party can fairly be said to be a state actor if (1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the State' and (2) the offending party 'acted together with or has obtained significant aid from state officials or because his conduct is otherwise chargeable to the State.'" *Tahfs*, 316 F.3d at 590-91 (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). The Sixth Circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test. *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995). The nexus test—the test most applicable to the facts of this case—requires a "sufficiently close relationship . . . between the state and the private actor so that the action taken may be attributable to the state." *Id*. "The inquiry is fact-specific, and the presence of state action is determined on a case-by-case basis." *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003) (citation omitted).

Buddenberg alleges that Commissioner Weisdack and Budzik worked together to draft the Notice that advised her of the disciplinary investigation against her. Compl. ¶ 72. Budzik then conducted the March 3, 2017 disciplinary hearing, knowing that Commissioner Weisdack had retaliated against Buddenberg for protected activity and that all policy violation allegations against her were baseless. *Id.* ¶ 87. Budzik then sought to coerce Buddenberg into dropping her retaliation claims against the District. *Id.* ¶ 94. At a March 7, 2017 Board meeting, Budzik recommended that the Board take disciplinary action against Buddenberg based on the

---

[2] Budzik relies entirely on *Polk County v. Dodson*, 454 U.S. 312, 318 (1981) to argue that he is not a state actor. However, *Polk* and its progeny hold that a state public defender is not a state actor by virtue of being paid by the state. State public defenders represent indigent criminal defendants, not the state. These cases do not illuminate under what circumstances a lawyer, paid to represent the state, becomes a state actor.

7

allegations that he knew to be false and were rebutted by Buddenberg during the March 3, 2017 hearing. *Id.* ¶ 98. He and Commissioner Weisdack then drafted the Ohio Revised Code § 124.34 Order ("Order"), finding Buddenberg guilty of nearly all of the allegations in the Notice. *Id.* ¶ 99. These facts allege a sufficient nexus between Budzik and the District. The complaint alleges that Budzik and Commissioner Weisdack worked together to retaliate against Buddenberg to the extent that Budzik's actions may be attributable to the District. The Court finds that Buddenberg has pleaded sufficient facts to allege that Budzik was a state actor.

### 2. Protected Speech

Budzik next alleges that Buddenberg's speech was not protected under the First Amendment because it was not made pursuant to her job duties. Mot. 13. Whether a public employee's speech is entitled to protection under the First Amendment is a two-step inquiry. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).[3] First, the Court must determine whether the employee spoke as a citizen on a matter of public concern. Generally, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. The critical question "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 134 S. Ct. at 2379. Further, "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 134 S.Ct. at 2380.

---

[3] Budzik does not address the second step of the inquiry: whether the District had an adequate justification for treating Buddenberg differently from any other member of the general public. *Lane*, 134 S. Ct. at 2378.

8

Buddenberg was responsible for various aspects of the District's fiscal management and human resources. Compl. ¶¶ 12-13. Her ordinary duties did not include reporting ethical and policy violations to the Board. *Id.* ¶ 14. Budzik argues that Buddenberg's statements were made pursuant to her job duties because she was responsible for payroll and human resource functions. Mot. 15. But Budzik does not allege that Buddenberg determined employee salaries or was responsible for reporting policy violations to the Board. To the contrary, reporting Commissioner Weisdack's ethical and policy violations to the Board does not appear to be a typical function of a human resources manager. Additionally, Buddenberg's speech addresses issues that are undoubtedly of public concern: unequal pay between men and women at the District and Commissioner Weisdack's unethical conduct concerning public funds. The Court finds that Buddenberg adequately alleges that she spoke as a citizen on a matter of public concern.

### 3. Qualified Immunity

Lastly, Budzik claims that even if the Court finds that he is a state actor, he is entitled to qualified immunity. Qualified immunity shields government officials from personal liability "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir.2006). Although qualified immunity should be resolved as early as possible, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Whether an officer is entitled to qualified immunity is usually dependent on the facts of the case and cannot be determined at the pleadings stage. *Oshop v. Tennessee Dep't of Children's Servs.*, No. 3:09-CV-0063, 2009 WL 1651479, at *7 (M.D. Tenn. June 10, 2009). Accordingly, the Court finds

that the determination of whether Budzik is entitled to qualified immunity is premature and cannot be determined at this stage in the litigation. Budzik may raise this defense if he develops a factual record to support it.

### D. Civil Liability for Criminal Acts (Claims 6-8)

In Claims 6-8, Buddenberg makes claims for civil liability against Budzik and the District Defendants, pursuant to Ohio Revised Code § 2307.60, for alleged violations of three Ohio criminal statutes: ORC § 2921.05 (Retaliation); ORC § 2921.03 (Intimidation); and ORC § 2921.45 (Interfering with Civil Rights). Budzik and the District Defendants both move to dismiss these claims,[4] arguing that Buddenberg may not bring claims under ORC § 2307.60 unless the defendants have actually been convicted of the criminal offenses underlying those claims. They assert that because neither Budzik nor the District Defendants were convicted of violations of ORC §§ 2921.05, 2921.03, and 2921.45, Buddenberg cannot state a claim for relief pursuant to ORC § 2307.60.

ORC § 2307.60 provides that "[a]nyone injured in person or property *by a criminal act* has, and may recover full damages in, a civil action . . .." ORC § 2307.60(A)(1) (emphasis added). Recently, in *Jacobson v. Kaforey*, the Ohio Supreme Court held that ORC § 2307.60 independently authorizes a civil action for damages caused by criminal acts. 75 N.E.3d 203, 204 (Ohio 2016).[5] The Ohio Supreme Court determined that the language of ORC § 2307.60 is plain and unambiguous and found that ORC § 2307.60(A)(1) "specifically authorize[s] a civil action for damages based on *the violation of any criminal statute*." *Id.* at 206 (emphasis added). Jacobson brought claims pursuant to ORC § 2307.60 for violations of three criminal statutes:

---

[4] Budzik is only named in Claims 6 and 7.
[5] Prior to *Jacobson*, ORC § 2307.60 was thought to "merely codif[y] Ohio common law that a civil action does not merge into a criminal prosecution." *Id.* at 205.

10

ORC § 2905.03 (Unlawful Restraint); ORC § 2905.01 (Kidnapping); and ORC § 2905.05 (Child Enticement). None of the *Jacobson* defendants had been convicted of the alleged criminal violations.[6] Although *Jacobson* is informative, the Ohio Supreme Court specifically stated in its opinion that what a plaintiff must do to prove a claim under ORC § 2307.60 was beyond the scope of the question certified for the Court's review. There is authority from this district that the state statute requires a plaintiff to allege and prove that the defendant was criminally convicted. *See Jane v. Patterson*, No. 1:16-CV-2195, 2017 WL 1345242 (N.D. Ohio Apr. 12, 2017); *A.A. v. Otsego Local Sch. Bd. of Educ.*, No. 3:15-CV-1747, 2016 WL 7387261 (N.D. Ohio Dec. 21, 2016); *and Ortiz v. Kazimer*, No. 1:11 CV 01521, 2015 WL 1400539 (N.D. Ohio Mar. 26, 2015).[7]

Further, neither party cited any caselaw discussing what burden of proof applies to an ORC § 2307.60 claim. A criminal conviction requires proof beyond a reasonable doubt; civil liability can be established by a preponderance of the evidence. If the legislature created civil liability for those injured by a "criminal act," did it mean to let a plaintiff do an end-run around the higher burden of proof required to establish a crime? Suppose a defendant is actually prosecuted and acquitted? May the victim go to civil court and seek to prove the same "criminal act" by a preponderance of the evidence? Interestingly, in 2007, the Ohio General Assembly amended ORC § 2307.60 to create a *presumption* of civil liability when the defendant had been convicted of a criminal violation. Am. Sub. S.B. 117. Had the General Assembly wanted to make a criminal conviction a condition precedent to establishing an ORC § 2307.60 claim, they

---

[6] *Jacobson v. Kaforey*, CV-2012-09-5246, is still pending in the Summit County Court of Common Pleas. On June 4, 2018, the Summit County judge denied Defendants' motion for judgment on the pleadings which again unsuccessfully sought dismissal of the ORC § 2307.60 claims.
[7] None of this cases cite *Jacobson*.

11

presumably could have done so. However, the creation of this presumption does not conclusively establish that a conviction is not required for civil liability.

Accordingly, the Court will deny the motion to dismiss at this time. Defendants may renew their challenge in the form of a motion for summary judgment after discovery and further research.

### E. State Law Privilege (Claims 4, 6, 7, and 9)

Budzik maintains that Buddenberg's state law claims should be dismissed because he is entitled to an Ohio law qualified privilege for attorneys acting on behalf of their clients. Mot. 16.

> It is by now well-established in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice.

*Simon v. Zipperstein*, 512 N.E.2d 636, 638 (1987). Buddenberg argues that this qualified privilege is limited to the context of legal malpractice claims and therefore cannot apply to Budzik. Opp. 20. Buddenberg cites two cases to support her contention: *Nix* and *Reich*.[8] Opp. 21-22. Neither case is applicable to this one. In *Nix*, the Sixth Circuit considered whether the absolute privilege that protects attorneys who republish defamatory statements when defending their clients applied. *Nix*, 160 F.3d at 352. This privilege is separate and distinct from the privilege Buzik asserts. Additionally, in *Reich*, the Court considered whether an employer's agent's actions were privileged. *Reich*, 897 F. Supp. at 1016. Agents are not subject to the same privileges as attorneys so the Court's reasoning in *Reich* does not apply here. Thus, the Court finds that Budzik can assert Ohio's qualified privilege for lawyers against Ohio statutory claims.

---

[8] Nix v. O'Malley, 160 F.3d 343 (6th Cir. 1998); Reich v. State Credit Inc., 897 F. Supp. 1014, 1016 (N.D. Ohio 1995).

However, Ohio's privilege does not apply when an attorney acts with malice. *Simon v. Zipperstein*, 512 N.E.2d 636, 638 (Ohio 1987). The malice exception to this qualified privilege applies in circumstances of "fraud, bad faith, collusion or other malicious conduct." *Shoemaker v. Gindlesberger*, 887 N.E.2d 1167, 1170 (Ohio 2008). Buddenberg alleges that Budzik played a leading role in her disciplinary investigation, hearing, and subsequent demotion, all while knowing that his actions were retaliatory. Compl. ¶ 87. She also alleges that Budzik attempted to coerce and intimidate her into dropping her EEOC charges against the Board. *Id.* ¶ 91. The Court finds that these allegations are sufficient to plead that Budzik acted with malice and is therefore not entitled to Ohio's qualified privilege. Should Budzik feel that the factual record does not support the contention that he acted with malice, he may reassert that he is entitled to this privilege.

## V.     Conclusion

For the foregoing reasons, the Court finds that Buddenberg's Claims 3-9 cannot be dismissed. Accordingly, Budzik's Motion to Dismiss and the District Defendants' Motion for Partial Judgment on the Pleadings are **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

*/s/Dan Aaron Polster June 28, 2018*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT COURT**