**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Rebecca Buddenberg, | : | Case No.: 1:18-cv-00522 |
| | : | |
| Plaintiff, | : | Judge J. Phillip Calabrese |
| | : | |
| vs. | : | Magistrate Judge William H. Baughman, Jr. |
| | : | |
| Carolyn E. Weisdack, Administrator of | : | |
| the Estate of Robert K. Weisdack , et al., | : | |
| | : | |
| Defendants. | | |

**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
THE ESTATE OF ROBERT WEISDACK, GEAUGA COUNTY HEALTH DISTRICT,
TIM GOERGEN, DAVID GRAGG, CATHERINE WHITRIGHT, CHRISTINA LIVERS,
AND ALTA WENDELL**

Well, this was predictable.[1] A sixty-six (66) page opposition. And of course, a new four (4) page declaration from Ms. Buddenberg. Through it all, Ms. Buddenberg fails to meet her burden to put forth any facts showing there is a genuine issue for trial.

Buddenberg did not like her boss. So she tried to get stop the renewal of his contract. This is a classic workplace beef, and it was so when she spoke to the Board about *why* she did not like her boss. To constitutionalize this grievance would fly in the face of Sixth Circuit precedent. Further, Buddenberg has failed to show that she suffered an adverse action under the First Amendment, Title VII, or the Equal Pay Act. She pled herself into a corner with regard to her Title VII and Equal Pay Act claims such that she cannot show her report of gender-based pay disparity was the but-for cause of any allegedly adverse actions. Her throwaway state law claims fail as well. All Buddenberg's claims against these Defendants should be dismissed.

---

[1] Literally, Defendants predicted this. (*See* Motion for Summary Judgment ECF No. 27 at PageID # 11913). Although admittedly, Defendants were off on how long the brief would be by one page. (*Id.*).

## I.      Buddenberg's Speech was Not Constitutionally Protected.

Buddenberg argues she spoke as a private citizen—and not pursuant to her job duties—when she spoke at work, during the workday, to her bosses, about matters concerning her work. (ECF No. 259, PageID # 14720-32). Buddenberg's argument boils down to the fact that she had never addressed the Board before her October 24, 2016, report and that reporting to the Board was not in her formal job description—a factor even she concedes is not dispositive. (ECF No. 259, PageID # 14722). But Buddenberg admitted, on three separate occasions, that her reports to the Board were pursuant to her job duties. (ECF No. 205-5, PageID # 9366; ECF No. 215-1, PageID # 11806, unnumbered ¶¶ 4-5; ECF No. 215-1, PageID # 11811-12). And when analyzing the factors to consider in determining whether an individual acted pursuant to her job duties—something Buddenberg does not do in her opposition to Defendants' Motion for Summary Judgment—all factors resolve in favor of Defendants. Through artful pleading and supplementary declarations seeking to explain away her own words, Buddenberg attempts to reframe her claims. But this is nothing more than a report to superiors about a bad boss making work difficult.

### A.  Before Engaging an Attorney, Buddenberg Admitted Multiple Times that Her October 24, 2016, Report to the Board was Made Pursuant to Her Job Duties.

Buddenberg admitted—three times—that she was speaking pursuant to her job duties. (ECF No. 205-5, PageID # 9366; ECF No. 215-1, PageID # 11806, unnumbered ¶¶ 4-5; ECF No. 215-1, PageID # 11811-12). She now knows these statements are damaging. So after she got a lawyer, she backtracked and claimed she was *actually* speaking as a private citizen. (ECF No. 204-23, PageID # 9009). And in response to Defendants' Motion for Summary Judgment, Buddenberg provided a Supplemental Declaration seeking to explain away her own statements. (ECF No. 257-1). Ignoring Buddenberg's demonstrated willingness to lie under oath whenever it benefits her (*see generally* Defs' Joint Mot. for Sanctions, ECF No. 256), her explanations are ridiculous and

illogical. She claims Defendants "demand inferences in their own favor." (ECF No. 259, PageID # 14725).  But Defendants rely only on her own statements, which she now seeks to qualify years after the fact. Applying the plain meaning of Buddenberg's own words requires no inference. And assertions in a self-serving affidavit offered in response to a motion for summary judgment are not sufficient to create a genuine issue of material fact. *Am. Speedy Printing Ctrs. v. AM Mktg., Inc.*, 69 F. App'x 692, 697 (6th Cir. 2003). Unsupported legal conclusions contained in a declaration— such as that Buddenberg did not act pursuant to her job duties as defined by First Amendment case law—are not to be considered. *Sigmon v. Applachain Coal Props.*, 400 F. App'x 43, 48-49 (6th Cir. 2010).

*First*, Buddenberg claims that the statement, "just doing my job" does not *actually* mean that she was "just doing her job" as it would plainly appear to anyone reading that statement. (ECF No. 257-1, PageID # 14651). Instead, she claims "just doing my job" referred to her "moral obligation she felt when working as an honest citizen in public service to report misconduct." (*Id.*). She does not provide any reasoning other than a conclusory statement that her admitted words don't actually mean what they say. (*Id.*). This is nothing more than a failed attempt to create a factual dispute, which harkens back to her ever-changing testimony at the spoliation hearing. *Am. Speedy Printing Ctrs.*, 69 F. App'x at 697.

*Second*, in the Ethics Complaint, Buddenberg stated she was retaliated against "[i]n exchange for fulfilling the obligations of [her] position and reporting wrongdoing [sic]." (ECF No. 215-1, PageID # 11806, unnumbered ¶ 5). Buddenberg did not produce this Ethics Complaint in discovery because she "forgot about" it "because it was so many years ago[,] and [she] was so distressed and desperate at the time." (ECF No. 259, PageID# 14726; ECF No. 257-1, PageID # 14652).  Now that she realizes the Ethics Complaint is damaging to her First Amendment claim,

Buddenberg conveniently recalls the reasoning for specific words used in the Ethics Complaint. (ECF No. 257-1, PageID # 14652).

In the entire third paragraph of Buddenberg's Ethics Complaint, she outlines that she was required by law, ethics policy, and the Geauga County Health District's personnel policy to report Weisdack. (ECF No. 215-1, PageID # 11806). And in the very next line, she reiterates that she was "fulfilling the obligations of [her] position." (*Id.*). She now says she was *actually* talking about something completely different—that was not even mentioned in the Ethics Complaint—in reference to "fulfilling the obligations of [her] position." (ECF No. 257-1, PageID # 14652). With regard to the "obligations of [her] position" and "reports of wrong doing [sic]" she mentioned in the Ethics complaint, Buddenberg states that she "believes" she was referring to the discipline she received for "just doing normal things like questioning day-to-day spending on well permits, trying to help with financial reporting, offering to help at a meeting, etc." (*Id.* at 257-1, PageID # 14652).

Even if this Court accepted the statements in Buddenberg's declaration, all it means is that she was punished for "just doing normal things," not for her report to the Board. (*Id.*). Indeed, whether Buddenberg was talking about her October 24, 2016, report to the Board or not, she explicitly stated in the same Ethics Complaint that "*following policy **and performing duties the residents and Board are paying me to provide***, *has resulted in punishment.*" (ECF No. 215-1, PageID # 11808). It could not be more clear that even Buddenberg believed she was punished for performing her job duties, not for her speech as a private citizen.

In the *third* act of Buddenberg's "I didn't really mean what I said" defense, she again states that the "job responsibilities" she was referring to were those responsibilities not mentioned in the same document. (ECF No. 257-1, PageID # 14651-52). In Buddenberg's email to Embleton, she states that she reported Weisdack to the Board to "ensure to my best ability we were legally compliant with employment law and Ohio Code of Ethics" and to "possibly avoid a legal action."

4

(ECF No. 215-1, PageID # 11812). In the *very next sentence*, Buddenberg refers to this as "the employment of my job responsibilities[.]" (*Id.*). But Buddenberg alleges she was *actually* talking about something else—not mentioned in the email to Embleton *at all*—the same confusion coincidentally present in her Ethics Complaint. (ECF No. 257-1, PageID # 14652-53, at ¶ 5).

Defendants need not further explain to the Court how illogical and contradictory these self-serving after-the-fact assertions are. Buddenberg clearly admitted—three times—that she was acting pursuant to her job duties in reporting to the Board. She cannot back track on this now.

**B.  The Impetus, Setting, Audience, and Subject Matter of the Allegedly Protected Speech: Buddenberg Tries to get Her Boss Fired by Reporting His Conduct Related to Their Job Duties to Her Supervisors while on the Clock at Work.**

Setting aside Buddenberg's admissions that she spoke pursuant to her job duties, an analysis of the impetus, setting, audience, and subject matter of Buddenberg's allegedly protected speech also reveals that she spoke pursuant to her job duties. *See Haddad v. Gregg*, 910 F.3d 237, 244 (6th Cir. 2018). Buddenberg acknowledges these are the factors are to be considered, yet she doesn't address any of them. (ECF No. 259, PageID # 14721). This is because every factor indisputably resolves in favor of Defendants. Buddenberg instead relies entirely on a big-picture argument that reporting to the Board was not within Buddenberg's job duties because she had never done it before and because it was not explicitly listed in her job description. (*See* ECF No. 259, PageID # 14722-25). She cites no authority, or attempts to explain logically, why performing an act for the first time makes it outside of one's job duties. And she concedes that "a public employee's job description is not conclusive." (*Id.* at PageID # 14722) (citing *Garcetti v. Cabellos*, 547 U.S. 410, 424-25 (2006)).

### i. Impetus: Buddenberg Hated Her Boss and Wanted to Prevent Renewal of His Contract, Effectively Terminating Him, so She Reported the Tire-Contract Issue. The Remaining Reports were Made at the Board's Request.

Buddenberg repeatedly described Weisdack as "evil" and "scum." (ECF # 208-2, PageID # 10444, 10448, 10451, 10475, 10502, 10505). She hated him. And when his contract was up for renewal, she saw it as her opportunity to take him down. So she decided to lodge complaints to the Board about Weisdack. (ECF No. 203-1, PageID # 8538). At the meeting on October 24, 2016, Buddenberg reported only the tire issue. (*Id*. at PageID # 8504, 8544). After reporting her concerns with the tire removal, *the Board asked* Buddenberg, "Is there anything else we should be aware of? Is [sic] there any other concerns that you have on Weisdack's behavior or practices?" (*Id*. at PageID # 8541). The Board "wanted to know what was going on" and requested that Buddenberg tell them what other concerns she had regarding Weisdack and the Health District. (*Id*.). So Buddenberg unloaded the remainder of her Complaints—at the Board's request. (ECF No. 31, PageID # 369-71).

The Sixth Circuit has noted that "most jobs carry with them an inherent duty of internal communication," which is not protected by the First Amendment. *Boulton v. Swanson*, 795 F.3d 536, 533 (6th Cir. 2015) (citing *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007) and *Haynes v. City of Circleville,* 474 F.3d 357, 364 (6th Cir. 2007)). These additional complaints are further unprotected because they were made at the Board's request and were therefore ad hoc duties. *Davidson*, 847 F. App'x at 309.

Contrary to all her prior communication, Buddenberg's new alleged reason as to why she reported Weisdack to the Board—which appeared for the first time only after she got an attorney— is that she felt a "moral obligation" as an "honest citizen" to do so. (ECF No. 257-1, PageID # 14651, at ¶ 4). This newfound "moral obligation" is odd considering Buddenberg waited five months to report the alleged pay disparity to the Board and celebrated that the "[t]iming on these

6

tires was perfect!" (ECF No. 205, PageID # 9366). Buddenberg's communication made no mention of this "moral obligation" before she became her attorney's pawn. (*See* ECF No. 208-2, PageID 10478) (Buddenberg notes that her "lawyer is establish[ing] constructive discharge grounds" by drafting her resignation letter and "look[ing] at every word and even decid[ing] the subject line for [her] emails."). Rather, her rhetoric was nasty and signified an intent to get the boss she hated fired. (ECF # 208-2, PageID # 10444, 10448, 10451, 10475, 10502, 10505). In the meeting with the Board, she responded to a direct request for information in providing the remaining complaints about Weisdack. (ECF No. 203-1, PageID # 8541; ECF No. 31, PageID # 369-71). This was the impetus of her report to the Board. This factor weighs in favor of Defendants.

### ii.  Setting: At Work During Business Hours.

There is no dispute that Buddenberg made her complaints to the Board at work during business hours. (ECF No. 203-1, PageID 8544). Indeed, Board Member David Gragg came to Buddenberg's office during the workday, while Buddenberg was on company time, and asked her to come speak to the Board in the conference room. (*Id.*). This factor weighs in favor of Defendants.

### iii. Audience: Buddenberg Directed Her Grievances about Her Boss to Her Supervisors, in Conformity with the Policy Manual.

This factor is also easily resolved in favor of Defendants. Buddenberg spoke to the Board Members—her supervisors—in making her report about Weisdack. (ECF No. 203-1, PageID # 8544). Buddenberg repeatedly stresses in her opposition to Defendants' Motion for Summary Judgment that this was the first time she had ever reported to the Board. (ECF No. 259, PageID # 14723). She fails to explain why this matters. Buddenberg also argues that she went outside the chain of command in making these reports. (*Id.* at PageID # 14722). But she did not.

Buddenberg ignores the Health District Policy Manual *explicitly instructing employees to bring their grievances before the Board* if they are not adequately addressed by their direct supervisor and the Health Commissioner. (ECF No. 215-1, PageID # 11809-10). And Buddenberg did just that. (ECF No. 203-1, PageID # 8544). She testified that she reported her concerns to her direct supervisor Dan Mix. (ECF No. 203-1, PageID #8520-21). Only after Mix did nothing, Buddenberg reported to the Board pursuant to the Policy manual. (*Id.*; ECF No. 215-1, PageID # 11809-10). So Buddenberg did not circumvent the chain of command as she falsely claims. (*See* ECF No. 259, PageID # 14722). This factor weighs in favor of Defendants.

### iv. Subject Matter: Buddenberg Reported Matters Concerning Her and Weisdack's Employment.

Buddenberg's initial issue she reported to the Board was regarding the tire contract. (ECF No. 203-1, PageID # 8508, 8543). The tire contract directly affected Buddenberg in her role as the workers' compensation liaison and the individual responsible for processing payments for contracts. (ECF No. 203-1, PageID # 8496). Indeed, she testified that it was her "responsibility" to make sure the payment could process. (*Id.* at 45:10-21). Before she got an attorney, she stated that she was "attempting to do [her] job and ensure we remained in compliance" with regard to the tire removal. (ECF No. 215-1, PageID # 11814). Buddenberg's speech regarding the tire contract was therefore made pursuant to her job duties.

Buddenberg's remaining comments at the October 24, 2016, meeting were made at the Board's request. (ECF No. 203-1, PageID # 8538). Buddenberg admitted as much in her deposition. (*Id.*). Apparently once again realizing that her own statements are damaging, Buddenberg seeks to divert focus from the statements by offering a full-page tantrum about defense counsel's deposition questioning, confusingly blaming defense counsel for her own testimony. (ECF No. 259, PageID # 14730). Buddenberg's counsel had every opportunity to

8

rehabilitate her during the deposition. Buddenberg also could have submitted an errata to correct her testimony. She did not. Instead, she waited until she saw Defendants' arguments in its Motion for Summary Judgment and submitted a strikingly detailed Supplemental Declaration regarding a conversation occurring almost seven years ago. (ECF No. 257-1).

Prior to realizing the problems with her First Amendment claim raised by Defendants, Buddenberg was clear: after reporting her concerns with the tire removal, the *Board asked* Buddenberg, "Is there anything else we should be aware of? Is [sic] there any other concerns that you have on Weisdack's behavior or practices?" (ECF No. 203-1, PageID # 8541). Then, **at the Board's request**, Buddenberg disclosed the remaining concerns, including pay disparities, misuse of public resources, the failure to implement adequate personnel policies, etc. (ECF No. 31, PageID # 369-71). All of this was done at her supervisors' request, so it was an ad hoc duty. *Davidson*, 847 F. App'x at 309.  And airing grievances about a boss is not protected conduct. *Naghtin v. Montague Fire Dist. Bd.*, 674 F. App'x 475, 479 (6th Cir. 2016).

Defendants do not argue that Buddenberg acted pursuant to her job duties simply because she attended the meeting as an employee.[2] The Sixth Circuit has held that individuals act pursuant to their job duties when they are invited to speak on matters that concern them. *Davidson*, 847 F. App'x at 309. Nonetheless, Buddenberg—without citation—conclusively states that this is not the law. (ECF No. 259, PageID # 14731). In *Davidson*, "any concerned citizen could have attended

---

[2] In attempting to impute this mischaracterization on Defendants' arguments, Buddenberg cites *Brack v. Budish,* 599 F. Supp. 3d 607 (N.D. Ohio 2022) for the proposition that the plaintiff had a "good-faith basis" for his First Amendment claims where he attended a meeting as an employee in his official capacity. (ECF No. 259, PageID # 14731). Buddenberg fails to mention, but the Court surely recalls, that this pronouncement came in an Order on the defendants' motion for sanctions against the plaintiff and his counsel—the same counsel who represents Buddenberg— for bringing frivolous First Amendment claims. *Brack*, 599 F. Supp. 3d 607. This Court expressed no opinion on "whether the plaintiff could survive summary judgment." *Id.* at 624.

the work session to express his or her view." *Id.* at 309-10. Still, the Plaintiff there was found to have acted pursuant to her job duties **because she was invited to speak**. *Id.* With regard to *Davidson*, and throughout her Opposition to Defendants' Motion for Summary Judgment, Buddenberg notes that she was just a low-level employee, not a principal like the plaintiff in *Davidson*. (*Id.* at PageID # 14750). Nowhere in her Opposition does she explain why this has any legal significance. She does not explain why she believes she deserves greater First Amendment Protection than someone in a higher position.

The subject matter of the conversation with the Board was all related to Buddenberg's employment and Weisdack's treatment of her at work. And much of Buddenberg's speech was in response to an invitation to speak, so her communications were pursuant to her job duties. *Davidson*, 847 F. App'x at 309; *Neiman v. Reid*, No. 1:12-cv-1645, 2015 U.S. Dist. LEXIS 42725 (N.D. Ohio Mar. 31, 2015). This factor, along with all the others, weighs in favor of Defendants.

Buddenberg asks this Court to do what the Sixth Circuit has warned against: "constitutionalize the employee grievance [thereby] compromising the proper functioning of government offices." *Naghtin*, 674 F. App'x at 479. Indeed, by Buddenberg's logic, any report to management regarding a problematic employee could form the basis of a constitutional claim by simply stating after the fact that she did it because of a "moral obligation," not because the policy manual says to. Public employers must be given some degree of latitude to deal with bad employees like Buddenberg without facing a First Amendment claim.

In an attempt to manipulate and handcuff the Court, Buddenberg continues to disingenuously insist that the Sixth Circuit held that she spoke as a private citizen "on these same facts at the motion-to-dismiss stage." (ECF No. 259, PageID # 14723). She ignores the copious amount of evidence brought to light that she did not include in her Complaint, including, among other things, Buddenberg's own admissions that she was speaking pursuant to her job duties, the

Health District policy that explicitly directed Buddenberg to raise her issues with the Board after Mix failed to act, the fact that the concerns Buddenberg raised directly related to her job functions, and the fact that most of her allegedly protected speech was made at the Board's request. These are not the same facts the Sixth Circuit was faced with at the Motion-to-Dismiss stage. This Court should hold that Buddenberg's speech was not protected by the First Amendment.

## II.  Buddenberg was Not Constructively Discharged.

Buddenberg cannot meet the "very demanding" standard required to show that she was constructively discharged. *Breyman v. RR Donnelley & Sons Co.,* No. 3:15CV01503, 2016 U.S. Dist. LEXIS 123164, *15 (N.D. Ohio Sep. 12, 2016). She made no effort to rebut the caselaw cited by Defendants indicating that a demotion cannot form the basis of a constructive discharge claim where the plaintiff never worked a single day in that role. *Bielert v. Northern Ohio Properties*, 863 F.2d 47, *12 (6th Cir. 1988); *Breyman*, 2016 U.S. Dist. LEXIS 123164, at *16; *Lee Crespo v. Schering Plough Del Caribe, Inc.*, 231 F. Supp. 2d 420, 432 (D.P.R. 2002); *Larkin v. Town of West Hartford,* 891 F. Supp. 719, 728 (D. Conn. 1995); *Carter v. AutoZoners, LLC*, No. 3:17CV02111, 2019 U.S. Dist. LEXIS 141822 (D. Conn. Aug 21, 2019). She repeatedly states that her pay was "hacked," "lopped," or "slashed" in half. But it was not. She quit before the demotion ever went into effect. (ECF # 204-1, PageID #8896-97). As a matter of law, the planned demotion, and pay cut that was to come along with it, cannot be factors considered in determining whether Buddenberg was constructively discharged. *Bielert*, 863 F.2d 47, *12.

Buddenberg's constructive discharge claim fails to the extent it is based on all the other de minimis reasons she cites as well: that her hours were changed to normal hours, she was placed on unpaid suspension, she had to work with people who did not like her, and she "faced badgering, harassment, and humiliation by the employer." (ECF No. 259, PageID # 14733). As noted in Defendants' Motion for Summary Judgment, none of these reasons are a sufficient basis for a

11

constructive discharge claim. *Dendinger v. Ohio*, 207 F. App'x 521, 527 (6th Cir. 2006) (holding that "condescending, rude and mean" behavior is not a sufficient basis for a constructive discharge claim.); *Regan v. Faurecia Auto. Seating, Inc.*, 679 F.3d 475, 482 (6th Cir. 2012) (holding that a one-hour schedule modification is not a sufficient basis for a constructive discharge claim). *Buddenberg does not cite a single case in support of her claim she was constructively discharged.* This is because the law is clear on this issue. None of the trivial issues that allegedly occurred rise to the level of a constructive discharge. This Court should hold that Buddenberg was not constructively discharged.

### III.   Buddenberg did Not Suffer an Adverse Action.

Without citation to any authority, Plaintiff states that the fact that Buddenberg did not spend a single day in her demoted position is "beside the point." (ECF No. 259, PageID # 14737). Not true. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014); *Ehrlich v. Kovach*, 710 F. App'x 646, 650 (6th Cir. 2017). The law is clear, just as with a constructive discharge claim, no adverse action occurs where the plaintiff never experiences a planned demotion. *Laster*, 746 F.3d at 727; *Ehrlich*, 710 F. App'x at 650. Buddenberg conclusively states these cases are "inapt," not because they are inapplicable, but because "adverse actions had already been taken." (ECF No. 259, PageID # 14737). So she effectively concedes her planned demotion and corresponding pay cut—unrealized harms—are not adverse actions. (*Id.*).

But before moving on from this point, Buddenberg's repeated statements regarding her pay cut must be addressed. Buddenberg states she "experienced tangible economic harm." ((ECF No. 259, PageID # 14737). This is simply untrue. Buddenberg inaccurately cites ECF No. 195-23 as a "payroll record" showing that Buddenberg was receiving reduced compensation. (*Id.* at PageID # 14736). In reality, this is an Employee Status Change Notice indicating that the rate of pay to be changed in the future. (ECF No. 195-23, PageID # 5327). Because Buddenberg voluntarily

resigned before working a single day in the demoted position, **she never experienced a pay cut**. (ECF # 204-1, PageID #8896-97). Thus, her statement that she "experienced tangible economic harm" is patently false.

The Court must "separate significant from trivial harm." *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53, 68 (2006). Under Title VII and the Equal Pay Act, Buddenberg cannot show that any of Defendants' actions would have dissuaded a reasonable person from supporting a charge of discrimination. *Id.* Even under the less stringent requirement under the First Amendment, none of the other actions taken by Defendants rise to the level of adverse actions. Buddenberg complains of having to do *less* work by the "removal of job responsibilities." (ECF No. 259, PageID # 14740). She also alleges generally that Weisdack was rude to her and that she was ostracized—actions she admitted Weisdack engaged in prior to any of her reports to the Board. (ECF No. 203-1, PageID # 8595-96). Indeed, this exact behavior from Weisdack was the subject of Buddenberg's reports to the Board. (ECF No. 31, PageID # 371). Buddenberg fails to identify specific acts that would have dissuaded a reasonable individual from reporting Weisdack (which Buddenberg did several times through EEOC Charges and written complaints). She spends pages arguing the standard for an adverse action, but her only argument with specific facts as to what about Defendants' actions were adverse is that she suffered on is that "[a] nearly 50% reduction in pay, particularly when coupled with the removal of job responsibilities, account access, and near-total ostracism, is 'materially adverse[.]'" (ECF No. 259, PageID # 14740).

None of Defendants' actions were anything more than petty slights or minor annoyances. A review of the actual actions that Buddenberg complains of, and not her hyperbole as to the effect it had on her, makes it clear she did not suffer any adverse actions.

IV.    **Buddenberg's Title VII and Equal Pay Act Retaliation Claims Fail Because She Cannot Show the Required "But-For" Causation.**

Defendants pointed out that Buddenberg's shotgun pleading approach backfired in that, based on her own allegations and testimony, she cannot establish her Title VII and Equal Pay Act Retaliation Claims because they are not but-for causes of the alleged adverse actions. (ECF No. 217, PageID # 11934-36). In response, Buddenberg simply states that Defendants must "eliminate" issues of fact on summary judgment. (ECF No. 259, PageID # 14744). But it is elementary that in response to a Motion for Summary Judgment, the burden shifts to the plaintiff to "set forth facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). She doesn't point to a single fact in response.

Instead, Buddenberg argues that she need not show that her reports of gender pay disparity were the but-for cause of the alleged adverse actions because she has produced direct evidence of discrimination under Title VII or the Equal Pay Act. (ECF No. 259, PageID # 14745). She argues she is entitled to summary judgment in *her* favor based on this "ample evidence." (*Id.*). She does not enlighten the Court as to what this "ample evidence" is and instead recommends that the Court re-read her entire Motion for Summary Judgment. (*Id.*). Buddenberg effectively concedes that if this Court does not hold that she is entitled to summary judgment on her Title VII and Equal Pay Act claims based on "direct evidence" of discrimination, her claims fail because there is no but-for causation. (*Id.*).

But there is no way around it. Buddenberg argued herself into a corner on these claims. She alleges she engaged in all sorts of protected activity in addition to that which is protected under Title VII And the Equal Pay Act. (ECF No. 31, PageID # 369-71). She engaged in all this allegedly protected activity during the same meeting with the Board. (*Id.*). There is not a single piece of

14

evidence on which a jury could possibly determine that it was the protected activity under Title VII and the Equal Pay Act *only* that led to the allegedly adverse actions against Buddenberg.

Buddenberg makes no argument that absent direct evidence of discrimination, she can show that her allegedly protected activity under Title VII and the Equal Pay Act were but-for causes of the allegedly adverse actions. Because there was quite clearly no direct evidence of such retaliation, Buddenberg has no argument against dismissal of her Title VII and Equal Pay Act claims. She failed to even attempt to "set forth facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

**V.     The Individual Defendants are Entitled to Qualified Immunity.**

In response to Defendants' qualified immunity argument, Buddenberg launches into a reiteration of previous arguments in a continued attempt to overwhelm the Court with voluminous filings. (ECF No. 259, PageID # 14746-51). *What she does not do is identify a single case sufficient to put the Defendants on notice that their specific conduct was clearly established* as a violation of law. Buddenberg again attempts to rely on the Sixth Circuit's decision at the motion-to-dismiss stage, praying that this Court "look no further" than that decision. (*Id.* at PageID # 14747). But again, the facts uncovered in discovery, and not revealed in Buddenberg's Complaint, mean that this decision is not binding.

Buddenberg's suggestion that *every reasonable official* would have known that Buddenberg was speaking as a private citizen as opposed to pursuant to her job duties in making her reports to the Board lacks support. Buddenberg herself stated she was acting pursuant to her job duties. (ECF No. 205-5, PageID # 9366; ECF No. 215-1, PageID # 11806, unnumbered ¶¶ 4-5; ECF No. 215-1, PageID # 5336-37). If the issues related to Buddenberg's First Amendment claims are not resolved in favor of Defendants, they are, at least, debatable. And qualified

immunity applies unless the constitutionality of the government official's conduct was "beyond debate." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

"[T]o find a clearly established constitutional right, a district court must find *binding* precedent by the Supreme Court, its court of appeals or itself." *Ohio Civil Service Employees Assoc. v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) (emphasis added). The focus of the analysis is whether the *conduct* complained of is clearly established, by binding precedent, as a violation of law—not whether the *right* that was allegedly violated was clearly established. *Id*. at 1174. Buddenberg violates this directive to focus on whether the specific *conduct* was clearly established as a violation of law, rather than whether the *right* was clearly established. (ECF No. 259, PageID # 14747) ("The federal constitutional law the District violated was clearly established—and a reasonable public official would have grasped that."). The analysis is not as easy as determining that Buddenberg had First Amendment rights, and Defendants violated those rights (which they deny). Rather, the proper analysis is whether it was *clearly established* that *the specific conduct* of Defendants was a violation of those rights. *Ohio Civil Service Employees Assoc.* (858 F.2d at 1177).

The Supreme Court expanded on this concept in *Anderson v. Creighton*, stating:

> For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*.

483 U.S. 635, 639 (1987).

Since *Anderson*, courts have continued to define clearly established law at too high a level of generality, and the Supreme Court has been forced to reiterate that the law must be clearly

established by then-existing precedent. Less than two years ago, the Court reiterated that the qualified immunity analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8, 211 L.Ed.2d 164 (2021); *see City of Tahlequah v. Bond,* 142 S. Ct. 9, 11, 211 L.Ed.2d 170 (2021) ("We have repeatedly told courts not to define clearly established law at too high a level of generality.").

Buddenberg once again asks this Court to do exactly what the Supreme Court has cautioned against: define "clearly established" law at too high a level of generality. *See* Bond*,* 142 S.Ct. at 11. But there is no controlling, or even persuasive, authority that would put Defendants on notice that their conduct was clearly established as a violation of law. Buddenberg points to no cases *clearly establishing* that she spoke as a private citizen and that *every reasonable official* would have known that. Defendants are entitled to summary judgment because Buddenberg was speaking pursuant to her official job duties. But if this Court disagrees, the issue of whether Buddenberg spoke pursuant to her job duties is, at the very least, debatable. *Wesby*, 138 S.Ct. at 589 ("[E]xisting law must have placed the constitutionality of the officer's conduct 'beyond debate.'") (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). Therefore, the Individual Defendants are entitled to qualified immunity. *Id.*

## VI.    Buddenberg's Claims under R.C. 2307.60 Fail.

Buddenberg's claims for civil liability for criminal acts under R.C. 2307.60 fail because Defendants did not violate the underlying criminal statutes.

### A.  Defendants did Not Violate R.C. 2921.05.

Buddenberg's reliance on an unpublished state-court case for the proposition that the public servant need not be involved in a civil or criminal action or proceeding under R.C. 2921.05 is unpersuasive. More recently, the Southern District of Ohio held otherwise in *Hensely v. Township*, No. 1:21cv373, 2022 U.S. Dist. LEXIS  180370, * 45 (S.D. Ohio Sep. 30, 2022). The court in

*State v. Matthews* confusingly concluded that the oxford comma before "or an attorney or witness" means that the phrase "who was involved in a civil or criminal action or proceeding" was only meant to modify "attorney or witness." 2013-Ohio-2183, 2013 Ohio App. LEXIS 2095, *11 (5th Dist. May 16, 2014). Neither the court nor Buddenberg explain why the use of an oxford comma changes the meaning of the sentence in this regard.

The *Matthews* court also states that "[t]he use of the word 'or' before the word 'attorney' would be superfluous if the phrase 'who was involved in a civil or criminal action or proceeding' was meant to modify each category." *Id.* However, this proposition makes no sense because the use of the word "and" instead of "or" would mean that no individual would be guilty of violating the statute unless he or she retaliated against each of the class of persons listed in the statute: "a public servant, a party official, [**and**] an attorney or witness[.]" Further, The Ohio Revised Code provides that "'[a]nd' may be read 'or,' and 'or' may be read 'and' if the sense requires it." R.C. 1.02(F). So changing the plain meaning of the statute based on the use of the word "or" rather than "and" is contrary to the Revised Code's guidance. *Id.*

The Southern District of Ohio's interpretation of R.C. 2921.05 is correct. *See Hensely*, 2022 U.S. Dist. LEXIS  180370, at * 45. And Buddenberg was not "involved in a civil or criminal action or proceeding." Buddenberg argues her involvement in EEOC proceedings satisfies this portion of the statute. (ECF No. 259, PageID # 14752). But an EEOC proceeding is not a "civil action." Indeed, the EEOC is given statutory authority to "bring a civil action" "after a charge is filed with the Commission," thereby indicating that the EEOC proceedings are not themselves "civil actions." *See Mcknight v. Gates*, 282 F. App'x 394, 397 (6th Cir. 2008) ("An individual may invoke the EEOC's administrative process **and then** file a civil action in federal district court if he is not satisfied with his administrative remedies.") (emphasis added). Because the EEOC's administrative review is not a "civil action," Defendants did not violate R.C. 2921.05.

18

**B. Defendants did Not Violate R.C. 2921.45.**

Defendants reiterate that they did not violate R.C. 2921.45 because they did not deprive Buddenberg of any constitutional or statutory rights. Therefore, they are not liable under R.C. 2307.60.

**VII.  Buddenberg's Claim under R.C. 4111.17(D) Fails.**

Buddenberg argues that she can sue under R.C. 4111.17(D) even though she did not suffer any discrimination in pay that is forbidden under the statute simply because the statute mentions retaliating for reporting discriminatory pay. (ECF No 259, PageID # 14755-56). In conclusively stating that "[t]here is no statutory warrant for Defendants' interpretation" of R.C. 4111.17(D), Buddenberg completely ignores that the damages available under the statute are "two times the amount of the difference between the wages actually received and the wages received by a person performing equal work[.]" (*See* ECF No. 259, PageID # 14755). Allowing Buddenberg to bring a cause of action under this section is irreconcilable with the language of the statute. Does Buddenberg suggest *she* should receive the difference between the wages of Amanda Hill and the male employee whom Buddenberg alleges was discriminately receiving higher pay? The only remedy provided by the statute clearly applies only to those who actually experience discrimination in their wages. Buddenberg is not included in this. Buddenberg's claim has no basis in the statute.

**VIII.  Buddenberg's Claim under R.C. 4112.02(J) and R.C. 4112.99 Fails.**

Buddenberg unilaterally rejects the rule that an individual must be involved in or actually make a decision to retaliate the plaintiff in order to be liable under R.C. 4112.02(J), even though both this Court and the Southern District of Ohio say otherwise. *See Cummings v. Greater Cleveland Reg'l Transit Auth.*, 88 F. Supp. 3d 812 (N.D. Ohio 2015); *Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1088 (S.D. Ohio 2022). The language of the statute supports this

19

interpretation as well, as none of the verbs used—"aid, abet, incite, compel, or coerce"—are passive. R.C. 4112.02(J). So the Board Members' failure to discipline Weisdack or otherwise prevent his allegedly retaliatory behavior cannot form the basis of Buddenberg's claim under R.C. 4112.02(J).

Buddenberg also strangely claims that no adverse action is required to establish a claim under R.C. 4112.02(J). But R.C. 4112.02(J) applies to aiding, abetting, etc. "any act declared by this section to be an unlawful discriminatory practice." A discriminatory practice is not unlawful under R.C. 4112 unless an adverse action is present because "[c]laims under Ohio Rev. Code § 4112 are analyzed under the same framework as Title VII claims." *Henry v. Abbott Labs.*, 651 F. App'x 494, 499 (6th Cir. 2016). Thus, there is no basis for Buddenberg's contention that there need to be an adverse action for a violation of R.C. 4112.02(J). And because Defendants did not engage in any adverse actions, they did not violate R.C. 4112.02(J).

The final unfounded challenge to well-settled law that Buddenberg engages in is her claim that R.C. 4112.02(J) allows for liability for the Health District itself, even though this Court has already held it does not. *(See* ECF No. 259, PageID # 14759-60). For some reason, Buddenberg cites *Woodworth v. Time Warrner Cable, Inc.*, in which this Court held R.C. 4112.02(J) applies to low-level employees as well as supervisors and managers. No. 1:15 CV 1685, 2015 U.S. Dist. LEXIS 148832, *6 (N.D. Ohio Nov. 2, 2015). The case does not even discuss whether an entity may be liable under R.C. 4112.02(J). This Court has made clear that an entity may not aid and abet itself. *Glass v. Tradesmen Int'l, LLC*, 505 F. Supp. 3d 747, 762 (N.D. Ohio 2020); *Van Leer v. Univ. Contr. Co.*, LLC, 1:20-cv-387, 2021 U.S. Dist. LEXIS 127807, at * 36 (N.D. Ohio Jul. 9, 2021). Any assertion to the contrary is illogical and has no basis in any case law. Thus, the Health District itself cannot be held liable under R.C. 4112.02(J).

Respectfully submitted,

/s/ Patrick Kasson
Patrick Kasson (0055570)
Thomas N. Spyker (0098075)
**Reminger Co., L.P.A.**
200 Civic Center Dr., Suite 800
Columbus, Ohio 43215
Tel:  (614) 228-1311 | Fax: (614) 232-2410
pkasson@reminger.com
tspyker@reminger.com

*Counsel for Geauga County Health District, Tim Goergen, David Gragg, Catherine Whitright, Christina Livers and Alta Wendell*

/s/ Gregory Beck
Gregory A. Beck (0018260)
Andrea Ziarko (0073755)
Baker Dublikar Beck Wiley & Mathews
400 South Main Street
North Canton, Ohio 44720
beck@bakerfirm.com
ziarko@bakerfirm.com

*Counsel for Defendant Carolyn E. Weisdack, Administrator of the Estate of Robert K. Weisdack*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was electronically filed via this Court's CM/ECF and served on all parties by operation of the Court's electronic filing system this 12th day of June, 2023, as follows:

Subodh Chandra (0069233)
Donald P. Screen (0044070)
Patrick Haney (0092333)
The Chandra Law Firm LLC
The Chandra Law Building
1265 West Sixth Street, Suite 400
Cleveland, Ohio 44113.1326
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com
Patrick.Haney@ChandraLaw.com
*Attorneys for Plaintiff Rebecca Buddenberg*

Timothy T. Brick (0040526)
Monica A. Sansalone (0065143)
Maia E. Jerin (0092403)
Gallagher Sharp LLP
1215 Superior Avenue, 7th Floor
Cleveland, OH 44114
tbrick@gallaghersharp.com
msansalone@gallaghersharp.com
mjerin@gallaghersharp.com
*Counsel for Defendant James Budzik*

Joseph H. Weiss, Jr.
8228 Mayfield Rd., Ste. 6B-1
Chesterland, OH 44026-2576
Email: joe@joejrlaw.com
*Co-Counsel for Defendant Robert Weisdack*

Gregory A. Beck
Baker, Dublikar, Beck, Wiley & Mathews
400 South Main St.
North Canton, Ohio 44720
beck@bakerfirm.com
*Counsel for Defendant Robert Weisdack*

Joseph G. Bogdewiecz
Freund, Freeze & Arnold
65 E. State St., Suite 800
Columbus, Ohio 43215
jbogdewiecz@ffalaw.com
*Counsel for Leila Vidmar*

*s/Patrick Kasson*
Patrick Kasson (0055570)
Thomas N. Spyker (0098075)